4/13/2015 3:13:06 PM
Chris Daniel - District Clerk Harris County
Envelope No. 4864996
By: Nelson Cuero
Filed: 4/13/2015 3:13:06 PM

2015-21206 / Court: 269

NO. ______________

| | | |
|---|---|---|
| GRIER PATTON and | § | IN THE DISTRICT COURT OF |
| CAMILLE PATTON | § | |
| Plaintiffs/Judgment-Creditors | § | |
| AND | § | |
| DAVID A. FETTNER | § | |
| Plaintiff/Judgment-Receiver | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MID-CONTINENT CASUALTY COMPANY | § | |
| Defendant/Judgment-Debtor | § | _____ JUDICIAL DISTRICT |

**PLAINTIFFS' ORIGINAL PETITION, DEMAND FOR JURY TRIAL and T.R.C.P. §194 REQUEST FOR DISCLOSURES**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW GRIER PATTON and CAMILLE Patton Plaintiffs/Judgment-Creditors and David A. Fettner, Plaintiff/Receiver (hereinafter collectively "Plaintiffs"), and bring this action against MID-CONTINENT CASUALTY COMPANY , Defendant, and in support of which would show the Court the following:

**DISCOVERY CONTROL PLAN**

1. Discovery in connection with this action is intended to be conducted under Level 3 of Rule 190.1, Texas Rules of Civil Procedure.

**PARTIES**

2. Plaintiffs/Judgment-Creditors are GRIER PATTON and CAMILLE PATTON (the "Pattons") are individual citizens who reside at 5803 Bayou Glen Road, Houston, Harris County, Texas.

3. Plaintiff/Receiver DAVID A. FETTNER ("Receiver") is the duly appointed, qualified and acting Receiver, whose office address is 6700 Sands Point Dr., Houston, Harris County, Texas 77074. Mr. Fettner is serving as such for pursuit of assets of Judgment-Debtor Black Diamond Builders, L.L.P., in Judgment dated January 12, 2015, in Cause No. 2011-42562, styled "Grier Patton and Camille Patton vs. Black Diamond Builders, L.L.P.; In the 55th Judicial District Court of Harris County, Texas" ("the underlying lawsuit").

4. Defendant MID-CONTINENT CASUALTY COMPANY ("Mid-Continent") is an insurance company authorized to engage in the insurance business in the State of Texas, which may be served with citation by serving its attorney for service, Margaret A. Bounds, 3100 South Gessner Road, Suite 600, Houston, Harris County, Texas 77063-3767.

**JURISDICTION AND VENUE**

5. The amount in controversy is within the jurisdictional limits of this Court. Jurisdiction is proper in this Court pursuant to the terms of the applicable insurance policy(ies) identified in paragraph 8 below. The actual amount in controversy exceeds $1,000,000.00 and is more particularly stated below.

6. Venue is proper in Harris County, Texas pursuant to Tex. Civ. Prac. & Rem. Code §§ 15.002 and 15.035, and because the applicable insurance policy issued by or transitioned in ownership and control to Mid-Continent, was to provide coverage for Black Diamond Builders, L.L.P., a builder of residential homes in Harris County, Texas, where that policy(ies) was performable; that insured home builder, then being a limited liability company having its principal office and place of business within this County, where, also, this insured and claimants suffered the damages claimed under the applicable General Liability Policy, *i.e.*, where the tort occurred.

**CONDITIONS PRECEDENT**

7. All conditions precedent have been performed or have occurred.

**ALLEGATIONS OF FACT AND LAW and UNDERLYING CLAIM**

8. Defendant Mid-Continent is bound to the insurance contract(s), policies numbered 04-GL-000554256 for the policy periods of July 7, 2004 - July 7, 2005; 04-GL-000596014 for the policy period(s) of July 7, 2005 - July 7, 2006; 04-GL-000638365 for the policy period(s) of July 7, 2006 - July 7, 2007; 04-GL-000680691 for the policy periods(s) of July 7, 2007 - July 7, 2008, and 04-GL-000722792 for the policy period(s) of July 7, 2008 - July 7, 2009; together with other general liability coverage contracted and in full force and effect by Black Diamond Builders, L.L.P. and Mid-Continent Casualty Company during the period of construction and at all relevant times thereafter, which policies named the Judgment-Debtor Black Diamond Builders, LLP ("Black Diamond") as a named insured under those policies, for the provision of certain builder's liability insurance, providing to Black Diamond contract of insurance and policy agreement in the form and content and upon the terms and provisions which, upon information

and belief, are those usual and customary to the industry and in this community. A true and correct copy of each of the Certificate of Liability Insurance and/or policy(ies) is attached hereto and incorporated herein by reference as Exhibits "A", "B", "C", "D" and "E".

9. The gravamen of this lawsuit is the satisfaction of Judgment-debt by collection of insurance proceeds due upon the above-referenced due upon the above-referenced Mid-Continent policy(ies) on the unpaid insurance claim(s) which became the judgment-debt pursuant to Judgment dated January 12, 2015 in Cause No. 2011-42562, styled "Grier Patton and Camille Patton v. Black Diamond Builders, L.L.P.; In the 55th Judicial District Court of Harris County, Texas." A true and correct certified copy of that Judgment is attached hereto and incorporated herein by reference as Exhibit "F". Plaintiffs/Judgment-Creditors Patton did make Application for Turnover Relief and Appointment of Receiver in that proceeding, and Order for same was signed on March 16, 2015. A true and correct certified copy of the Turnover Order is attached hereto and incorporated herein by reference as Exhibit "G". By reason and as a result of that Order, Plaintiffs/Judgment-Creditors Patton are successors-in-interest to the claims of the Judgment-Debtor Black Diamond upon its insurance policy(ies) now having been awarded them; Plaintiffs/Judgment-Creditors Patton now pursue those claims as a "chose in action" owned by Plaintiffs/Judgment Creditors Patton, or alternatively or in addition thereto, by and through the Judgment-Debtor Black Diamond having its claim of and from the insurer in this action, together with the Receiver (who joins herein as additional Plaintiff), as that interest has been ordered "turned over" to them as Judgment-Creditors. The Turnover Order did not involve or make an adjudication of indebtedness *per se* upon the referenced insurance contract(s), but simply awarded to Plaintiffs whatever nature and extent of claim the Judgment-debtor may have upon their insurer, as a "chose in action".

10. Plaintiffs/Judgment-Creditors Patton having obtained their award in Arbitration in American Arbitration Association Case No. 70-436 00004 11, styled "Grier Patton and Camille Patton vs. Black Diamond Builders, L.L.P.", then reduced that Award to Judgment in the State Court of appropriate jurisdiction. Plaintiffs/Judgment-Creditors Patton, together with Plaintiff/Receiver David A. Fetter, now undertake this litigation for collection of the Plaintiffs/Judgment-Creditors Pattons' damages awarded them upon their claims in Arbitration and the Award later then reduced to Judgment, were upon causes of action based upon builder negligence and liability therefore, as well as upon the builder, Judgment-Debtor Black

Diamond's warranty of good and workmanlike construction. In addition, Plaintiffs/Judgment Creditors Patton claimed Black Diamond and/or its subcontractors breached contract(s) with Plaintiffs/Judgment Creditors Patton in several ways, including, but not limited to failing to properly supervise subcontractors. Additionally, Plaintiffs/Judgment Creditors Patton claimed Black Diamond and/or its subcontractors were negligent and proximately caused damage by, among other things, improperly and negligently site or ground/surface preparation and failing to properly oversee subcontractors on the project. Plaintiffs/Judgment Creditors Patton allege Black Diamond is liable for the acts and omissions of its own as well as its subcontractors. Judgment upon Arbitration Award was obtained upon those causes of action and now pursuit is made accordingly.

11. Upon the conclusion of the Arbitration, the presiding Arbitrator Richard P. Flake, having heard the evidence and arguments of the parties, did make award for Plaintiffs/Judgment Creditors Patton and against Black Diamond. The terms and provisions of that Award, including the specific award of damages was reduced to the Judgment dated January 12, 2015 (Exhibit "F"). Now, subsisting Judgment dated January 12, 2015 includes findings consistent with policy coverage, according to which Plaintiffs/Judgment-Creditors Patton are beneficiaries, or additionally and alternatively successors-in-interest, and under the facts and circumstances herein alleged, are therefore entitled to direct action against the insurer, Defendant Mid-Continent. The claim for money damages is a fully matured debt, in the total amount of TWO MILLION NINE HUNDRED THIRTY-FIVE THOUSAND NINE HUNDRED FORTY-FOUR and 00/100 DOLLARS ($2,935,944.00), plus interest at the rate of five percent (5%) per annum from date of judgment until fully paid, which incorporates the Arbitration Award, upon a "reasoned opinion", which includes findings consistent with policy coverage, for which Plaintiffs/Judgment-Creditors Patton here and now seek recompense and judgment of and from Defendant Mid-Continent; alternatively, Plaintiffs/Judgment Creditors Patton would show their entitlement to prove their claim in trial *de novo* as against the insurance carrier for those issues and facts, if any, not previously adjudicated relative to insurance liability and coverage, particular to indemnity obligation. Plaintiffs/Judgment Creditors Patton and Plaintiff Receiver seek, in addition to those claims otherwise herein made, award of Receiver's fees and expenses assessed as costs in this proceeding and/or other were adjudicated as a part of compensatory damages, should any be incurred reasonable and necessary to this proceeding.

**ATTORNEYS' FEES**

12. Under the facts and circumstances herein alleged, Plaintiffs/Judgment-Creditors Patton, having engaged the undersigned counsel for prosecution of this action, are entitled to reasonable and necessary attorneys' fees herein incurred, for which Plaintiffs make additional claim, as particularly statutorily authorized, including, *inter alia*, Section 38.001 of the Texas Civil Practice and Remedies Code and Sections 541.152 and 542.060 of the Texas Insurance Code.

**BAD FAITH CLAIM - UNREASONABLE DENIAL OF COVERAGE**

13. Defendant Mid-Continent has the obligations of the insurance policy naming Black Diamond as the insured, and thereby insuring the Plaintiffs/Judgment-Creditors Patton's residential construction as to the subject matter of the Plaintiffs/Judgment-Creditors Patton's lawsuit and judgment against Black Diamond, applicable during all relative periods of time. Plaintiffs/Judgment-Creditors Patton are beneficiaries of that insurance policy and entitled to direct action under the laws of this State and, *inter alia*, as a result of the open and notorious insolvency of the judgment debtor, and as a result of turnover order to the Plaintiff Receiver and Plaintiffs/Judgment-Creditors Patton. The insurance policies being numbered by Defendant Mid-Continent as 04-GL-000554245, 04-GL-000596014, 04-GL-000638365, 04-GL-000722792, and 04-GL-000680691, and as may have been amended and revised through the years, were at all times material to this action in full force and effect.

14. During the policy period, the home premises of the Plaintiffs/Judgment Creditors Patton, insured by Defendant Mid-Continent pursuant to the referenced insurance contract(s), sustained and has continued to sustain damages, *i.e.*, injury to property, as a result of one or more acts and occurrences of negligence and/or breach of warranty of good and workmanlike construction by Black Diamond. The reasonable and necessary cost of repairing the damaged property is in excess of TWO MILLION NINE HUNDRED THIRTY-FIVE THOUSAND NINE HUNDRED FORTY-FOUR and 00/100 DOLLARS ($2,935,944.00), including foundation repairs and cosmetic reconstruction as awarded in Judgment. The injury to property includes damage to property which is not the work of Black Diamond, and neither are the damages subject to any other policy exceptions or exclusions.

15. Despite the fact that all conditions precedent to the Plaintiffs/Judgment-Creditors Patton's recovery have been performed or have occurred, Defendant Mid-Continent has failed and refused to pay Plaintiffs/Judgment Creditors Patton in accordance with its contract obligation(s).

Plaintiffs/Judgment-Creditors and/or their predecessor-in-interest, being Judgment-Debtor Black Diamond, have notified Defendant Mid-Continent of the occurrence of covered incidents within the policy terms and provisions and despite demand for satisfaction of policy provisions and payment for repair and reconstruction under policy terms, Defendant Mid-Continent has unjustifiably delayed and denied and/or refused liability or otherwise failed and refused to respond to demand for coverage and/or to make payment for reparations under the subject policy of insurance, compelling Plaintiffs to institute this litigation. Defendant Mid-Continent was and remains obligated under its insurance policy(ies) and under the allegations of the Plaintiffs/Judgment-Creditors Patton in the underlying lawsuit/Arbitration not only to provide defense to Black Diamond, but as well, to provide coverage for indemnity as to the claims that were made. Notwithstanding, Defendant Mid-Continent did wrongfully fail and refuse to honor its obligation for indemnity, for which demand has been made. During the period of construction of the subject premises, Black Diamond had contracted for additional and subsequent general liability coverage, including the occurrences made the subject of this dispute, where the primary time-exposure to the progress of construction through multiple major construction defects by Black Diamond and multiple contractors under the supervision and control of Black Diamond. A second insurance company provides additional general liability coverage but only during a limited time of the construction process; the additional coverage has paid its fair portion of indemnity for damages(s) for which set-off shall be made; notwithstanding, the bulk of the damages owing in indemnity from Mid-Continent remains due and owing. Plaintiffs/Judgment-Creditors Patton would show that Defendant Mid-Continent has a consistent practice of denying coverage upon home defect construction such that it provides a policy for general liability, which in practice is not honored as a general liability policy as determined by the common law of this State.

16. The Defendant Mid-Continent has in the interim, tendered no sum, disclaiming liability under the subject policies. Defendant Mid-Continent has refused to acknowledge the damages caused by its insured and provide recompense for same. The Defendant Mid-Continent has thus unreasonably delayed and refused or failed to provide payment of this claim, which is the producing and proximate cause of the harm suffered in damages by Plaintiffs/Judgment-Creditors , about which this lawsuit is made.

17. Thus, after having received notice of the Plaintiffs/Judgment-Creditors Patton's losses clearly covered by the parties' contract(s) of insurance, all as set out in the preceding paragraphs of this Petition and alternatively so in the referenced Judgment, the Defendant Mid-Continent has engaged in several unfair settlement practices, as enumerated and declared unfair or deceptive in Article 541.060 of the Texas Insurance Code and Section 17.46(b) of the Texas Business and Commerce Code, including but not limited to the following:

a. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Plaintiffs/Judgment-Creditors Patton's claim once the Defendant Mid-Continent's liability became reasonably clear.

b. Failing to provide promptly a reasonable explanation of the Defendant Mid-Continent's basis for its denial of the Plaintiffs/Judgment-Creditors Patton's claim.

c. Failing to affirm or deny coverage within a reasonable time.

d. Refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

18. The Plaintiffs/Judgment-Creditors Patton will show that these acts and omissions on Defendant Mid-Continent's part were done knowingly, that is with an actual awareness of the falsity, unfairness, or deception of the conduct described. Consequently, the Plaintiffs/Judgment-Creditors Patton request that the trier-of-fact award the Plaintiffs/Judgment-Creditors Patton additional damages of up to three times the sum of actual damages suffered.

19. Plaintiffs/Judgment-Creditors Patton would show their entitlement to pre-judgment interest upon the damages hereinabove alleged, consistent with applicable common and statutory law of this State, at the rate of five percent (5%) per annum as provided by the Judgment.

**BREACH OF CONTRACT**

20. Plaintiffs/Judgment-Creditors Patton are persons entitled to make a direct claim under the terms of the policy issued by Defendant Mid-Continent, and as result of the fact that the damage to the insured property, as alleged above is covered, under the terms of the policy issued by the Defendant Mid-Continent and as a result of their right, entitlement, and interest in the subject policy(ies) under the Order for Turnover and otherwise as hereinabove pled as to their succession-in-interest to the policy/contract(s).

21. From and after the time the Plaintiffs/Judgment-Creditors Patton's claim was presented to the Defendant Mid-Continent, the Defendant Mid-Continent's liability to pay the claim in accordance with the terms of the subject insurance policy was reasonably clear. Despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny payment of the Plaintiffs/Judgment-Creditors Patton's claim, the Defendant Mid-Continent refused to accept the claim and pay the Plaintiffs/Judgment-Creditors Patton as the policy(ies) required. This point is well made by the holding of recent case precedents, enforcing policy coverage under the same operative facts. At that time, the Defendant Mid-Continent knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear. In this regard, the Plaintiffs/Judgment-Creditors Patton will show that the Defendant Mid-Continent failed to conduct a reasonable, proper investigation of the claim and refused to rely on the true facts, resorting instead to producing faulty, incomplete, and biased reasons as subterfuges to avoid paying in full the valid claim. Consequently, the Defendant Mid-Continent breached its duty to deal fairly and in good faith with the Plaintiffs/Judgment-Creditors Patton, in addition to this breach of contract(s). The Defendant Mid-Continent's breach was a proximate cause of the losses, expenses, and damages suffered by the Plaintiffs/Judgment-Creditors Patton as more specifically described herein.

22. Defendant Mid-Continent breached its insurance contract(s) by failing to pay damages in connection with the underlying lawsuit. In particular, the underlying lawsuit falls within the coverage afford by the subject policy and no exclusions apply to negate coverage. In addition, all conditions in the policy either were satisfied or were waived by Defendant Mid-Continent.

**ADDITIONAL TO BREACH OF CONTRACT CLAIM -**
**CLAIM OF THIRD-PARTY BENEFICIARY AND/OR TORT**

23. By virtue of the special relationship between Plaintiffs/Judgment-Creditors Patton and Defendant Mid-Continent, the Defendant Mid-Continent owed Plaintiffs/Judgment-Creditors Patton duties of good faith and fair dealing with respect to Plaintiffs/Judgment-Creditors Patton's claim. Defendant Mid-Continent breached these duties by refusing to pay benefits when Defendant Mid-Continent knew or should have known that it was reasonably clear that benefits were due under the policy(ies), or otherwise that the benefits and claim were not excluded under policy terms. In particular, the conduct of Defendant Mid-Continent was tortious in that, among other things, Defendant Mid-Continent denied the claim for damage to property knowing that in

the opinion of one or more qualified experts, the damages resulted from an insured event wherein Plaintiffs/Judgment-Creditors were contemplated as the beneficiaries under the policy terms, despite the opportunity for Defendant Mid-Continent to make the same investigation and come to the same conclusion and Defendant Mid-Continent did ignore the report of one or more experts which made reasonable conclusions confirming that the property loss claimed by Plaintiffs/Judgment-Creditors Patton was payable under policy terms, notwithstanding which, Defendant Mid-Continent offered no settlement of Plaintiffs/Judgment-Creditors Patton's claim in any amount.

24. As a proximate result of the tortious conduct of Defendant Mid-Continent, and of their continued breach of contract of which Plaintiffs/Judgment-Creditors Patton are a beneficiary, Plaintiffs/Judgment-Creditors Patton have been damaged in that they suffered not only the loss of those sums due and owing under the policy, but also, for the fact that the conduct of Defendant Mid-Continent was malicious or with conscious indifference to and reckless disregard of the rights of Plaintiffs/Judgment-Creditors Patton, Plaintiffs/Judgment-Creditors Patton are further entitled to an award of exemplary damages in an amount determined by the trier-of-fact. This reckless disregard of the Plaintiffs/Judgment-Creditors Patton's rights constitutes conduct by Defendant Mid-Continent for which these Plaintiffs/Judgment-Creditors Patton should receive from Defendant Mid-Continent exemplary, punitive damages in an amount sufficient to punish Defendant Mid-Continent for its misconduct and to deter similar misconduct in the future.

**CLAIM UNDER D.T.P.A. AND TEXAS INSURANCE CODE**

25. Plaintiffs/Judgment-Creditors Patton are consumers within the definition of the Deceptive Trade Practices - Consumer Protection Act, Tex. Bus. & Com. Code Ann., §§ 17.41, et seq., (herein referred to as the "D.T.P.A."), having acquired, albeit indirectly, from Defendant Mid-Continent the goods and services represented by the insurance policy(ies) insuring the events and occurrences herein complained of.

26. The conduct of Defendant Mid-Continent about which Plaintiffs/Judgment-Creditors Patton herein complain, which constitutes unfair settlement practices, are specifically enumerated as an unlawful deceptive practice in the D.T.P.A., pursuant to Tex. Bus. & Com. Code Ann., §17.46(b). The D.T.P.A. specifically incorporates the provisions of Insurance Code Article 541, allowing an action pursuant to the D.T.P.A. if the producing cause of damages is the use or employment by any person of an act or practice in violation of Article 541 (Tex. Bus. &

Com. Code Ann. §17.50(a)(4)) or which is otherwise in violation of Texas Insurance Code Article 541.

27. Defendant Mid-Continent's conduct as described above was a producing cause of Plaintiffs/Judgment-Creditors Patton's economic damages as otherwise herein pled. As a result, Plaintiffs/Judgment-Creditors Patton have sustained damages as enumerated in this Petition.

28. Notwithstanding the allegation(s) of the preceding paragraphs, alternatively and in addition thereto, Plaintiffs/Judgment-Creditors Patton would show that the conduct of Defendant Mid-Continent as described in this Petition was committed knowingly. Defendant Mid-Continent was actually aware, at the time of the conduct, of the conduct about which Plaintiffs/Judgment-Creditors Patton complain. As a direct result of Defendant Mid-Continent's knowing misconduct, Plaintiffs/Judgment-Creditors Patton are entitled to additional damages of up to three times the amount of economic damages herein pled, as permitted by the D.T.P.A. and Section 541.152 of the Texas Insurance Code.

29. Notwithstanding the allegation(s) of the preceding paragraphs, alternatively and in addition thereto, Plaintiffs/Judgment-Creditors Patton would show that the conduct of the Defendant Mid-Continent was committed intentionally. That is, said Defendant Mid-Continent had actual awareness of the conduct about which Plaintiffs/Judgment-Creditors Patton complain, coupled with the specific intent that Plaintiffs/Judgment-Creditors Patton act in detrimental ignorance of the unfairness committed by Defendant Mid-Continent. Particularly in this regard, Defendant Mid-Continent denied Plaintiffs/Judgment-Creditors Patton claim upon false and pretextural grounds. As a result of Defendant Mid-Continent's intentional misconduct, Plaintiffs/Judgment-Creditors Patton are entitled to additional damages up to three times Plaintiffs/Judgment-Creditors Patton's economic damages as provided by the D.T.P.A. and Section 541.152 of the Texas Insurance Code. Plaintiffs/Judgment-Creditors Patton are likewise entitled to recompense of reasonable and necessary attorneys' fees as otherwise hereinabove alleged, and as provided by the Texas Deceptive Practices and Consumer Protection Act, and other applicable statutes and common law relative to the breach of written agreement.

30. Attached hereto and incorporated herein by reference respectively as Exhibits"H", "I", and "J", are true and correct copies of written responses of Defendant Mid-Continent upon notice made by Black Diamond for the claims made the basis of this action. Plaintiffs/Judgment-Creditors Patton intend to avoid any assertion by Defendant Mid-Continent of laches or

expiration of any period of limitations; therefore, if this action is undertaken less than 60-days following date of notice of unfair insurance practices for the causes of action otherwise included within this Petition, Plaintiffs/Judgment-Creditors Patton provide named Defendant Mid-Continent sixty (60) days opportunity for abatement of this action and to give the Defendant Mid-Continent the opportunity to inspect the property and document the damages during the sixty (60) days following this notice to allow offer of reasonable remedy. In the event no offer of reasonable remedy is made or is otherwise rejected, Plaintiffs/Judgment-Creditors Patton do intend and shall pursue this action to conclusion.

31. In summary of the relationship, events, and result thereof:

a. A special relationship existed between the Plaintiffs/Judgment-Creditors Patton and Defendant Mid-Continent such that the Defendant Mid-Continent owed the Plaintiffs/Judgment-Creditors Patton a duty of good faith and fair dealing;

b. The Defendant Mid-Continent denied and/or delayed benefits under the contract/subject policy when it knew or should have known that it was reasonably clear that the claim was covered; and

c. The Defendant Mid-Continent's denial and/or delay proximately caused, as well as was a producing cause of the damage to the Plaintiffs/Judgment-Creditors Patton as otherwise herein pled.

32. Plaintiffs/Judgment-Creditors Patton's claim, and allege entitlement to, recompense of reasonable and necessary attorneys' fees, authorized and mandated by the following authority:

a. Texas Civil Practice and Remedies Code §38.001, *et.seq.*, where breach of contract and/or oral agreement is alleged;

b. Texas Deceptive Practices and Consumer Protection Act - Tex. Bus. & Com. Code Ann., §17.46, *et.seq.*, allowing for award of attorneys' fees. The D.T.P.A. specifically incorporates the provisions of Texas Insurance Code Article 541, allowing an action pursuant to the D.T.P.A. if the producing cause of damages is the use or employment by any person of an act or practice in violation of Texas Insurance Code Article 541 (Tex. Bus. & Com. Code Ann. §17.50(a)(4));

c. Sections 541.152 and 542.060 of the Texas Insurance Code;

d. In connection with assessment of exemplary damages, reasonable and necessary attorneys' fees are contemplated by common law, case precedent. The amount of attorneys' fees claimed necessary and

reasonable through trial of this matter is $100,000.00; conditional award(s) of reasonable and necessary attorneys' fees upon appeal are $25,000.00 for each appellate stage.

**PRE-JUDGMENT INTEREST**

33. Plaintiffs/Judgment-Creditors Patton would show their entitlement to pre-judgment interest upon the damages hereinabove alleged, consistent with applicable common and statutory law of this State, at the maximum rate allowed thereby.

**COLLECTIVE INTERESTS OF RECEIVER AND JUDGMENT-CREDITORS**

34. Where in this Petition it is alleged that Plaintiffs/Judgment-Creditors Grier Patton and Camille Patton are entitled to benefits and interests conferred upon them as Judgment-Creditors, and claims are made in connection therewith, Plaintiffs/Judgment-Creditors Grier Patton and Camille Patton do so in their individual capacities and as well or collectively together with the Plaintiff/Receiver, David A. Fettner, by, through, and under him, and otherwise, in their collective interest and with that Receiver's participation.

**JURY DEMAND**

35. A trial by jury is requested and the appropriate fee has been tendered in the State Court Action.

**REQUEST FOR DISCLOSURE**

36. Under Texas Rule of Civil Procedure §194 Plaintiffs/Judgment-Creditors Patton and Plaintiff/Receiver Fettner request that Defendant Mid-Continent disclose, within fifty (50) days of the service of this request, the information and/or material described in Rule 194.2.

**PRAYER**

**WHEREFORE**, premises considered, Plaintiffs/Judgment-Creditors Grier Patton and Camille Patton together with Plaintiff/Receiver David A. Fettner, pray that Defendant Mid-Continent Casualty Company be cited to appear and answer herein, and that upon final trial hereof, Plaintiffs/Judgment-Creditors Patton have and be awarded judgment as follows:

1. Judgment of and from Defendant Mid-Continent Casualty Company for damages in the amount of TWO MILLION NINE HUNDRED THIRTY-FIVE THOUSAND NINE HUNDRED FORTY-FOUR and 00/100 DOLLARS ($2,935,944.00), as alleged and otherwise within the jurisdictional limits of this Court;

2. Judgment of and from Defendant Mid-Continent Casualty Company for reasonable and necessary attorneys' fees, together with conditional awards in the event of appeals;

3. Judgment of and from Defendant Mid-Continent Casualty Company of Receiver's fees and expenses assessed as costs in this proceeding and/or other adjudicated as a part of compensatory damages;

4. Judgment of and from Defendant Mid-Continent Casualty Company for punitive damages in amount determined by the trier-of-fact;

5. Judgment of and from Defendant Mid-Continent Casualty Company in a multiple of actual damages to the Plaintiffs/Judgment-Creditors Grier Patton and Camille Patton as provided by the D.T.P.A.;

6. Judgment of and from Defendant Mid-Continent Casualty Company for punitive damages as provided by the Texas Insurance Code as noted above;

7. Judgment of and from Defendant Mid-Continent Casualty Company for pre-judgment interest at the maximum rate provided by law;

8. Judgment of and from Defendant Mid-Continent Casualty Company for interest after date of judgment at the then legal rate per annum until fully paid;

9. Judgment of and from Defendant Mid-Continent Casualty Company for costs of court; and

10.   Further, that judgment be granted for such other and further relief
to which Plaintiffs/Judgment-Creditors Grier Patton and Camille
Patton may be justly entitled.

Respectfully submitted,

SCHLANGER, SILVER, BARG & PAINE, L.L.P.

By: /s/  *MICHAEL A. HIRSCH*
Michael A. Hirsch
State Bar No.: 09718200
109 North Post Oak Lane, Suite 300
Houston, Texas 77024
(713/735-8583 (direct)
(713) 785-1700 (main)
(713) 785-2091 (Facsimile)
Email: mhirsch@ssbplaw.com

ATTORNEY FOR PLAINTIFFS
GRIER PATTON and CAMILLE PATTON and
PLAINTIFF/RECEIVER DAVID A. FETTNER



2015-21206 / Court: 269

# CERTIFICATE OF LIABILITY INSURANCE

OP ID: THBR

DATE (MM/DD/YYYY) 05/13/11

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

PRODUCER

Hotchkiss Insurance Agency LLC
13105 NW Freeway, Suite 850
Houston, TX 77040-6312
Pat Janosky, CIC

713-956-9800
713-956-0331

CONTACT NAME:
PHONE (A/C, No, Ext): FAX (A/C, No):
E-MAIL ADDRESS:
PRODUCER CUSTOMER ID #: BLACK-2

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: Mid-Continent Casualty Co | 23418 |
| INSURER B: Travelers P & C Co.of America | |
| INSURER C: Hartford Underwriters Ins Co | 30104 |
| INSURER D: Oklahoma Surety Co | |
| INSURER E: | |
| INSURER F: | |

INSURED

Black Diamond Builders Corp
Black Diamond Development Corp
Black Diamond Builders, LLP
Black Diamond Development, LLP
5757 Woodway, #110
Houston, TX 77057

COVERAGES CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ 1,000,000 |
| A | X COMMERCIAL GENERAL LIABILITY | | | 04GL000554256 | 07/07/04 | 07/07/05 | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | CLAIMS-MADE [X] OCCUR | | | | | | MED EXP (Any one person) | $ EXCLUDED |
| | X Per Proj/per Loc | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | X $5000 PD Ded | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | POLICY PROJECT LOC | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| D | ANY AUTO | | | 06TX002906111 | 07/07/04 | 07/07/05 | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | SCHEDULED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | X HIRED AUTOS | | | | | | | $ |
| | X NON-OWNED AUTOS | | | | | | | $ |
| | UMBRELLA LIAB / OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB / CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DEDUCTIBLE | | | | | | | $ |
| | RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N | | | | | | WC STATUTORY LIMITS / OTHER | |
| C | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | 46WECGF2612 | 09/13/03 | 09/13/04 | E.L. EACH ACCIDENT | $ 500,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 500,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 500,000 |
| B | Builders Risk | | | QT6600515B220TIL04 | 07/07/04 | 07/07/05 | Per Loc | 1,500,000 |
| | Special Form | | | $2500 DEDUCTIBLE | | | Per Occ | 5,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

CERTIFICATE HOLDER

INSURED

INSURED'S COPYXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXX

CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE

Douglas B. Hitchins

EXHIBIT

tabbles

A

© 1988-2009 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD



2015-21206 / Court: 269

# CERTIFICATE OF LIABILITY INSURANCE

OP ID: THBR

DATE(MM/DD/YYYY) 05/13/11

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

PRODUCER 713-956-9800 / 713-956-0331
Hotchkiss Insurance Agency LLC
13105 NW Freeway, Suite 850
Houston, TX 77040-6312
Pat Janosky, CIC

CONTACT NAME:
PHONE (A/C, No, Ext): FAX (A/C, No):
E-MAIL ADDRESS:
PRODUCER CUSTOMER ID #: BLACK-2

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: Mid-Continent Casualty Co | 23418 |
| INSURER B: Travelers P & C Co.of America | |
| INSURER C: Hartford Underwriters Ins Co | 30104 |
| INSURER D: Oklahoma Surety Co | |
| INSURER E: | |
| INSURER F: | |

INSURED
Black Diamond Builders Corp
Black Diamond Development Corp
Black Diamond Builders, LLP
Black Diamond Development, LLP
5757 Woodway, #110
Houston, TX 77057

COVERAGES CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ 1,000,000 |
| A | X COMMERCIAL GENERAL LIABILITY | | | 04GL000596014 | 07/07/05 | 07/07/06 | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | CLAIMS-MADE X OCCUR | | | | | | MED EXP (Any one person) | $ EXCLUDED |
| | X Per Proj/per Loc | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | X $5000 PD Ded | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | POLICY PRO-JECT LOC | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| D | ANY AUTO | | | 04CA002734132 | 07/07/05 | 07/07/06 | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | SCHEDULED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | X HIRED AUTOS | | | | | | | $ |
| | X NON-OWNED AUTOS | | | | | | | $ |
| | UMBRELLA LIAB OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DEDUCTIBLE | | | | | | | $ |
| | RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | | | | X WC STATU-TORY LIMITS OTH-ER | |
| C | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) Y/N | N/A | | 46WECGF2612 | 09/13/04 | 09/13/05 | E.L. EACH ACCIDENT | $ 500,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 500,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ 500,000 |
| B | Builders Risk | | | QT6600515B220TIL05 | 07/07/05 | 07/07/06 | Per Loc | 1,500,000 |
| | Special Form | | | $2500 DEDUCTIBLE | | | Per Occ | 5,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

CERTIFICATE HOLDER

INSURED

INSURED'S COPYXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXX XXXXXXXXXX

CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE

EXHIBIT B

© 1988-2009 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD



# MID-CONTINENT CASUALTY COMPANY

P. O. Box 1409 Tulsa, Oklahoma 74101

POLICY DECLARATION

| | |
|---|---|
| Policy No. | 04-GL-000596014 |
| Renewal of | 04-GL-000554256 |

| Named Insured and Mailing Address | Agent Name and Mailing Address |
|---|---|
| BLACK DIAMOND BUILDERS LLP<br>BLACK DIAMOND DEVELOPMENT LLP<br>SEE NAMED INSURED ENDORSEMENT<br>5757 WOODWAY #110<br>HOUSTON TX 77057 | HOTCHKISS INSURANCE AGENCY INC 42-0325<br>13105 NORTHWEST FREEWAY<br>SUITE 850<br>HOUSTON TX 77040-6312 |

Policy Period: From **07/07/2005** To **07/07/2006** at 12:01 A.M. Standard Time at your mailing address as shown above.

Business Description: **HOMEBUILDER**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ 42,253 |
| OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART | $ |
| PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART | $ |
| RAILROAD PROTECTIVE LIABILITY COVERAGE PART | $ |
| TOTAL | $ 42,253 |

**REPORTING BASIS: ANNUAL**

**Form(s) and Endorsement(s) made a part of this policy at this time*: See Attached Schedule– MI 9027**

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

Countersigned at: HOUSTON TX

Date: 07/14/2005

By ______________________

Authorized Representative

ML 14 87 (01 97)

AGENT COPY

# COMMERCIAL GENERAL LIABILITY COVERAGE PART

## DECLARATION

Policy No. 04–GL–000596014

Effective Date: 07/07/2005 **
12:01 A.M. Standard Time

**LIMITS OF INSURANCE**

| | | | |
|---|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ | 2,000,000 | |
| Products-Completed Operations Aggregate Limit | $ | 2,000,000 | |
| Personal and Advertising Injury Limit | $ | 1,000,000 | |
| Each Occurrence Limit | $ | 1,000,000 | |
| Damage to Premises Rented To You | $ | 100,000 | Any One Premises |
| Medical Expense Limit | $ | EXCLUDED | Any One Person |

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**

Form of Business: **CORPORATION**

Business Description*: **HOMEBUILDER**

Location of All Premises You Own, Rent or Occupy:

**PREMIUM**

| Location Classification | Code No. | Premium Basis (A)Area C)Cost P)Payroll U)Per Unit S)Gross Sales T)See Desc) | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| SEE ATTACHED SCHEDULE | | | | | | |

Minimum Premiums
All Other
Pr/Co
Policywriting $ 500

Total Advance Premium $ 24,576. $ 17,677.

**FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)**

Forms and Endorsements applying to the Coverage Part and made part of this policy at time of issue:

*Information omitted if shown elsewhere in the policy.

**Inclusion of date optional.

These declarations are part of the policy declarations containing the name of the insured and the policy period.

# COMMERCIAL GENERAL LIABILITY
# EXTENSION OF DECLARATION

**Policy No.** 04-GL-000596014

PREMIUM

| Location<br>Classification | Code No. | | Premium Basis<br>A)Area C)Cost<br>P)Payroll U)Per Unit<br>S)Gross Sales T)See Desc. | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| TEXAS | | | | | | | |
| Homebuilders Program – General Contractor – Premises/Operations | 900500 | P) | 281,000 | | 55.789 | | 15,677. |
| Homebuilders Program – General Contractor – Products/Completed Operations | 900501 | S) | 16,000,000 | 1.536 | | 24,576. | |
| additional insured ML1081 Flat Charge | 49950 | T) | | | | | 1,000. |
| waiver of subrogation ML1080 Flat Charge | 49950 | T) | | | | | 500. |
| additional insured ML1357 Flat Charge | 49950 | T) | 1 | | 500.000 | | 500. |

Extension of Declarations - Total Advanced Premium

MID–CONTINENT CASUALTY COMPANY
P. O. BOX 1409 TULSA, OK 74101

# SUPPLEMENTARY DECLARATIONS FOR NAMED INSURED

| Policy No. | 04–GL–000596014 |
|---|---|
| Renewal of | 04–GL–000554256 |

THE NAMED INSURED FOR THIS POLICY IS:
BLACK DIAMOND BUILDERS LLP BLACK DIAMOND DEVELOPMENT LLP
BLACK DIAMOND BUILDERS, LLP
BLACK DIAMOND DEVELOPMENT, LLP

# EXTENSION OF FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this policy at this time*:

| | |
|---|---|
| ** | CG0300(01/96) |
| ** | MI9005(01/97) |
| ** | ML1080(01/99) |
| ** | ML1081(03/01) |
| ** | ML1097(04/99) |
| ** | ML1098(04/99) |
| ** | ML1191(04/00) |
| ** | ML1195(04/00) |
| ** | ML1357(11/02) |
| ** | CG2135(10/01) |
| ** | ML1439(04/97) |
| ** | ML1344(03/97) |
| ** | ML1189(06/02) |
| ** | ML1188(06/02) |
| ** | MI9059(04/04) |
| ** | MI9046(05/01) |
| ** | MI9014(03/98) |
| ** | MI9002(06/00) |
| ** | IL0275(07/02) |
| ** | IL0168(05/02) |
| ** | IL0021(05/04) |
| ** | IL0017(11/98) |
| ** | CG2639(04/99) |
| ** | CG2426(07/04) |
| ** | CG0103(03/02) |
| ** | CG0001(12/04) |
| ** | ML1198(06/02) |
| ** | CG2294(10/01) |
| ** | ML1217(04/01) |
| ** | CG0205(12/04) |

** – The form applies to all states unless otherwise indicated.

# GENERAL CHANGE ENDORSEMENT

Policy No. 04-GL-000596014

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS |
|---|---|
| BLACK DIAMOND BUILDERS LLP<br>BLACK DIAMOND DEVELOPMENT LLP<br>SEE NAMED INSURED ENDORSEMENT<br>5757 WOODWAY #110<br>HOUSTON TX 77057 | HOTCHKISS INSURANCE AGENCY INC 42-0325<br>13105 NORTHWEST FREEWAY<br>SUITE 850<br>HOUSTON TX 77040 |

POLICY PERIOD: From 07/07/2005 to 07/07/2006 at 12:01 a.m Standard Time At Your Mailing Address Shown Above.

**Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements, or declarations of the undermentioned Policy other than as stated below.**

Forms CG0205 and ML1357 should read:

THE WOODLANDS LAND DEVELOPMENT COMPANY, L.P.;
THE WOODLANDS COMMERCIAL PROPERTIES COMPANY, L.P.;
THE WOODLANDS OPERATING COMPANY, L.P.;
THE CARLTON WOODS ASSOCIATION;
THE WOODLANDS ASSOCIATION, INC.;
THE WOODLANDS CUSTOM SALES, LP.;
THE WOODLANDS CUSTOM RESIDENTIAL SALES, LLC;
IMI RESORT PROPERTIES, INC. DBA CARLTON WOODS PROPERTIES

---

**End of Schedule**

COUNTERSIGNED AT: HOUSTON TX DATE: 07/15/2005 BY: __________
Authorized Representative

POLICY NUMBER: 04-GL-000596014

COMMERCIAL GENERAL LIABILITY
CG 02 05 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – AMENDMENT OF CANCELLATION PROVISIONS OR COVERAGE CHANGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

In the event of cancellation or material change that reduces or restricts the insurance afforded by this Coverage Part, we agree to mail prior written notice of cancellation or material change to:

**SCHEDULE**

| | |
|---|---|
| **1.** | **Name:**<br>**See MI9005** |
| **2.** | **Address:**<br>**PO Box 5050, The Woodlands, TX 77387-5050** |
| **3.** | **Number of days advance notice: 30** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

© ISO Properties, Inc., 2003

POLICY NUMBER: 04-GL-000596014

COMMERCIAL GENERAL LIABILITY
CG 03 00 01 96

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount and Basis of Deductible PER CLAIM | or PER OCCURRENCE |
|---|---|---|
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ 5000 | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

Copyright, Insurance Services Office, Inc., 1994

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suits" seeking those damages; and

2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

 Copyright, Insurance Services Office, Inc., 1994

POLICY NUMBER: 04-GL-000596014

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description And Location Of Premises Or Classification:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section I – Supplementary Payments:

   **h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

© ISO Properties, Inc., 2000

# HOMEBUILDER
# EXTERIOR INSULATION AND FINISH SYSTEM ENDORSEMENT

## STATE OF TEXAS

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Unless so indicated below, the "Exterior Insulation and Finish System Hazard" is included within the Limit of Insurance.

☐ A. If so indicated, the "Exterior Insulation and Finish System Hazard" is limited to:

$ ______________ Aggregate

$ ______________ Deductible Per Claim

☒ B. If so indicated, this insurance does not apply to "Property Damage" arising out of the "Exterior Insulation and Finish System Hazard".

Definition

1. "Exterior Insulation and Finish Hazard" means the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system when performed by you or;

Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used on any part of that structure when performed by you or on your behalf.

2. "Exterior Insulation and Finish System" means;

   a) a rigid or semi-rigid insulation board made of expanded polystyrene or other materials, and

   b) the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate, and

   c) a reinforced base coat, and

   d) a finish coat providing surface texture and color.

Insurance provided by this endorsement shall not apply if "your work" was completed more than 365 days prior to the date of the "occurrence".

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# ADDITIONAL INSURED – OWNERS, LESSEES or CONTRACTORS (FORM B)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Name of Person or Organization: **The Woodland Land Development Company**

1. **WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability directly attributable to your performance of "your work" for that insured.
2. With respect to **1.** above the following additional provisions apply:

   **4. Other Insurance**

   The insurance afforded by this Coverage Part is primary insurance and we will not seek contribution from any other insurance available to the insured unless the other insurance is provided by a contractor other than the above named additional insured. We shall be considered as excess insurance of any other insurance provided by a contractor other than the above named additional insured.

   This amendment applies only when you have agreed by written "insured contract" to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy.

All other conditions remain unchanged

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

 © ISO Properties, Inc., 2003

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

 © ISO Properties, Inc., 2003

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

© ISO Properties, Inc., 2003

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

© ISO Properties, Inc., 2003

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

© ISO Properties, Inc., 2003

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

 © ISO Properties, Inc., 2003

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

 © ISO Properties, Inc., 2003

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:
   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";
   b. This insurance applies to such liability assumed by the insured;
   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";
   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;
   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and
   f. The indemnitee:
      (1) Agrees in writing to:
         (a) Cooperate with us in the investigation, settlement or defense of the "suit";
         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";
         (c) Notify any other insurer whose coverage is available to the indemnitee; and
         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and
      (2) Provides us with written authorization to:
         (a) Obtain records and other information related to the "suit"; and
         (b) Conduct and control the defense of the indemnitee in such "suit".

   So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

   Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:
   a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or
   b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:
   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.
   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.
2. Each of the following is also an insured:
   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:
      (1) "Bodily injury" or "personal and advertising injury":

 © ISO Properties, Inc., 2003

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

© ISO Properties, Inc., 2003

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

   a. **Primary Insurance**

      This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

   b. **Excess Insurance**

      This insurance is excess over:

      (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

         (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

 © ISO Properties, Inc., 2003

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

© ISO Properties, Inc., 2003

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
   b. Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.
2. "Auto" means:
   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".
3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
4. "Coverage territory" means:
   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;
   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or
   c. All other parts of the world if the injury or damage arises out of:
      (1) Goods or products made or sold by you in the territory described in a. above;
      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or
      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.
5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".
6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.
7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.
8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:
   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
   b. Your fulfilling the terms of the contract or agreement.
9. "Insured contract" means:
   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";
   b. A sidetrack agreement;
   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
   e. An elevator maintenance agreement;
   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

 © ISO Properties, Inc., 2003

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

© ISO Properties, Inc., 2003

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

 © ISO Properties, Inc., 2003

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2003

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

**B.** Paragraph **2.d.** of **Section I – Coverage B – Personal And Advertising Injury** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**d. Criminal Acts**

"Personal and advertising injury" arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

 © ISO Properties, Inc., 2001  □

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion l. of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

 © ISO Properties, Inc., 2000

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 24 26 07 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2004

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

 Copyright, Insurance Services Office, Inc., 1998

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.
3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998  □

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

(Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

 © ISO Properties, Inc., 2001

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001