COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,** Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2.,** Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the Definitions Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 © ISO Properties, Inc., 2004

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion l. of **Section l – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

## 2. Exclusions

This insurance does not apply to:

### l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

 © ISO Properties, Inc., 2000

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 24 26 07 04

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

 © ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 26 39 12 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

  (a) Refusal to employ that person;

  (b) Termination of that person's employment; or

  (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

  (a) Refusal to employ that person;

  (b) Termination of that person's employment; or

  (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b) or (c) above is directed.

 © ISO Properties, Inc., 2006 □

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 □

INTERLINE
IL 00 21 05 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties;

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material";

   "Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

  © ISO Properties, Inc., 2001   □

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2001      □

IL 01 68 05 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the **Duties** Condition.

We will notify the first Named Insured in writing of:

1. An initial offer to compromise or settle a claim made or "suit" brought against any insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

 © ISO Properties, Inc., 2001 □

IL 02 75 05 03

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY
FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYEE THEFT AND FORGERY POLICY
EMPLOYMENT-RELATED PRACTICES LIABILITY
FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT
COVERAGE FORM
GLASS COVERAGE FORM
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 2. of the **Cancellation** Common Policy Condition is replaced by the following:

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

© ISO Properties, Inc., 2001 □

However if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

The permissible reasons for cancellation are as follows:

a. If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

b. If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

(1) Fraud in obtaining coverage;

(2) Failure to pay premiums when due;

(3) An increase in hazard within the control of the insured which would produce an increase in rate;

(4) Loss of our reinsurance covering all or part of the risk covered by the policy; or

(5) If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**B.** The following condition is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

2. This Paragraph, **2.**, applies unless the policy qualifies under Paragraph **3.** below.

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

3. If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

a. The first Named Insured; and

b. Each unit-owner to whom we issued a certificate or memorandum of insurance.

We will mail or deliver such notice to each last mailing address known to us.

4. If notice is mailed, proof of mailing will be sufficient proof of notice.

5. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

© ISO Properties, Inc., 2001 IL 02 75 05 03 □

NOTICE OF AVAILABILITY OF LOSS CONTROL SERVICES

THE STATE OF TEXAS

TO ALL COMMERCIAL INSURANCE POLICYHOLDERS:

Thank you for placing your commercial insurance with us.

This letter is to inform you that Mid-Continent Group has Safety Engineering/Loss Control Services to assist you with your safety and loss control activities.

An effective loss prevention program is one way responsible employers help to control cost. In an effort to assist in developing an effective accident prevention program, the Safety Engineering/Loss Control Department of Mid-Continent Group is available to:

- evaluate the accident prevention activities currently being implemented to identify strengths and weaknesses.

- conduct surveys of physical conditions and operational work practices to assist in accident prevention.

- analyze accident data to determine frequency and severity trends.

- consult in administrative procedures and supervisory training for exposure recognition and reduction.

If any time we can be of service, please feel free to contact our Safety Engineering/Loss Control Department at (713) 334-0050.

Sincerely,

Mid-Continent Group
Don T. Thompson, P.E.
Safety Engineering/Loss Control
Manager

MI 9002 (06 00)

CONTACT INFORMATION SHEET

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Mid-Continent Casualty Group's toll-free telephone number for information or to make a complaint at;

1-800-722-4994

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance at:

P. O. Box 149104
Austin, Texas 78714-9104

FAX #(512) 475-1771

PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the agent or Mid-Continent Casualty Group first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de Mid-Continent Casualty Group's para informacion o para someter una queja al:

1-800-722-4994

Puede comunicarse con el Departamento de Seguros do Texas para obtene informacion acerca do companias, coberturas, derechos o quejas al:

1-800-252-3439

Puede escribir el Departamento do Seguros de Texas:

P. O. Box 149104
Austin, TX 78714-9104

FAX #(512) 475-1771

DISPUTAS SOBRE PRIMAS O RECLAMOS: Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con al agente o Mid-Continent Casualty Group primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

UNA ESTE AVISO A SU POLIZA: Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

MI 9014 (03 98)

## MID-CONTINENT GROUP®
## PRIVACY NOTICE
## AND
## NOTICE OF INFORMATION PRACTICES

The member of Mid-Continent Group ("Mid-Continent," including those companies listed at the end of this Notice) respect your right to privacy.

We want you to know about our procedures for protecting your privacy and your rights and responsibilities regarding information we receive about you. We want you to understand how we gather information about you, how we protect it, and how you can help ensure its accuracy. Although we may provide this Notice as information to additional persons, the terms of this Notice apply to those individuals who inquire about or obtain insurance from Mid-Continent primarily for personal, family or household purposes, and certain group insurance plans. We will provide our customers with a copy of the most recent notice of our privacy policy at least annually and more often if we make any changes affecting their rights under our privacy policy. This Notice applies to current and former customers of Mid-Continent, but does not in any way imply or affect insurance coverage. You can find the online version of this Notice on our web site at www.mcg-ins.com.

Because Mid-Continent does not share your information outside of permitted exceptions, there is no need for you to take any action under this Notice. If we change our practices in the future, we will advise you and, if applicable, enable you to "opt-out" of certain sharing.

### 1.    What kind of information is collected about you?

We get most of our information about you directly from you, such as your name, address, social security number, income level and certain other financial information, on insurance applications and other forms that you provide to us. While in some cases the information you provide to your insurance representative during the insurance application process gives us all the information we need to evaluate you or your property for insurance, there are instances when we may need additional information or may need to verify information you have given us. In those cases, we may obtain information from outside sources at our own expense.

It is common for an insurance company to ask an independent source to verify and supplement information given on an insurance application. There are many such independent companies, commonly called "consumer reporting agencies," which are in the business of providing independent information to insurance and other financial services companies. We will treat the information we receive about you from an independent reporting agency in accordance with the terms of this Notice. Upon our receipt of your written request sent to the address set forth in Section 5, we will inform you of the name and address of any agency we have used to prepare a report on you so that you can contact the agency.

Once you have been an insured customer of ours for a period of time, your record may contain information related to our experiences and transactions with you, such as insurance policy coverage, premiums and payment history, and any claims you make under your insurance policy. For example, information collected by a claims representative and any policy or fire report will be retained by us. Any information that we collect in connection with an insurance claim will be kept in accordance with this Notice.

Each company within Mid-Continent Group may disclose information about you to an affiliate regarding its transactions and experiences with you (such as your payment or claims history). We do not currently share other credit-related information, except as permitted or required by law.

Finally, we do use "cookies" when you interact with our web sites to make that experience easy and meaningful for you. When you visit our web site, our web server sends a cookie to your computer. A cookie is an electronically transmitted file that holds small pieces of information. When you navigate through our web site, your browser "requests" pages for you to view, and that request will include the information stored in the cookie we previously sent to your computer. This process is like an electronic "handshake" between our system and your computer; the information exchanged allows us to recognize your browser.

Cookies are used to collect and store only the following information: the visitor's domain name, the Internet address of the web site from which the visitor linked directly to our web site, the pages of our site that the visitor views and the length of time spent on each page, browser and operating system platform type, and the date and time the visitor accessed our site.

Cookies, as well as data taken from them, do not identify you personally. They merely recognize your browser. Unless you choose to identify yourself to us, either by responding to a promotional offer, buying a policy, or registering for an online service, you remain anonymous.

Session cookies exist only during an online session with Mid-Continent. Session cookies allow you to conduct transactions or requests on our web site. Without the session cookie information, we would not be able to complete your web transactions securely. Session cookies help us make sure you are who you say you are after you have logged in. We do not sell this or any other information about you to other web sites, merchants or financial institutions.

## 2. What do we do with information about you?

Information about you will be kept in our insurance policy records. We will refer to and use that information for purposes related to issuing and servicing insurance policies and settling claims. Generally, personal information about you in our records will not be disclosed by us to any external organization without your prior authorization. However, we may, as permitted by law, share information about you contained in our files with certain persons or organizations such as:

your insurance representative,

persons who represent you in a fiduciary capacity, including your attorney or trustee, or who have a legal interest in your insurance policy,

adjusters, appraisers, auditors, investigators and attorneys,

persons or organizations who need the information to perform a business, professional or insurance function for us,

other insurance companies, agents or consumer reporting agencies as information is needed in connection with any insurance application, policy or claim involving you,

medical professionals to inform you of a medical condition of which you may not be aware,

persons or organizations that conduct research, including actuarial or underwriting studies, provided that no individual information may be identified in any research study report,

persons or organizations that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements,

our affiliated companies,

to a court, state insurance department or other government agency pursuant to a summons, court order, search warrant, subpoena, or as otherwise required by law or regulation.

## 3. Who has access to your information?

Mid-Continent currently incorporates a system of passwords and other appropriate physical, electronic and procedural safeguards to protect against unauthorized access to potentially private information. We will educate our employees about the terms of this Notice and the importance of confidentiality and customer privacy. Employees who gain unauthorized access or who otherwise violate our privacy policy are subject to disciplinary action up to and including termination of employment. We plan to monitor and evaluate our information security program and available security software in light of relevant changes in technology to determine ways to increase protections to the security or integrity of our records and information.

**4. How can you review recorded information about you?**

Generally, you have the right to review and receive a copy of the recorded personal information about you contained in our files with respect to a particular policy number, except for certain legal and medical documents. You have the further rights to request that we correct any of this information. To exercise these rights, you must send to us a notarized request at the address set forth below stating your complete name, address, insurance policy number, daytime phone number, and a copy of your driver's license or other personal identification. If you believe any information is incorrect, we will investigate and correct it if we can substantiate the error. Even if we do not correct the information, you have the right to file with us a written statement of dispute which we will include in any future disclosure of the information.

**5. How can you contact us?**

If, after reading this, you have any questions about our privacy policy, please write to us at the following address:

MID-CONTINENT GROUP
1437 S. Boulder
Suite 200
Tulsa, OK 74119
Attn: Compliance Office - Privacy

Mid-Continent Casualty Company
Mid-Continent Insurance Company
Oklahoma Surety Company

# FIGHTING INSURANCE FRAUD

## INSURANCE FRAUD COSTS YOU MONEY!

More than 10 percent of all insurance claims are fraudulent. Preventing insurance fraud will directly benefit you by lowering the insurance premiums you pay.

### MID-CONTINENT CASUALTY COMPANY

is committed to putting a stop to insurance fraud. Help us by bringing this costly crime to a halt. If you are aware of an individual committing fraud, call the Texas Department of Insurance Fraud Hotline at **1-888-327-8818.**

### MID-CONTINENT CASUALTY COMPANY

and the Texas Committee on Insurance Fraud are fighting insurance fraud through public education, communication and cooperation.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# EXCLUSION - INJURY OR DAMAGE FROM EARTH MOVEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" arising out of, caused by, resulting from, contributed to, aggravated by, or related to earthquake, landslide, mudflow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting or any other movement of land, earth or mud.

All other conditions remain unchanged

POLICY NUMBER: **04-GL-000722792**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED CONSTRUCTION PROJECT(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Designated Construction Projects:
**ALL PROJECTS AWAY FROM YOUR PREMISES WHERE YOU ARE PERFORMING WORK**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

   1. A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

   2. The Designated construction Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

      a. Insureds;

      b. Claims made or "suits" brought; or

      c. Persons or organizations making claims or bringing "suits".

   3. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

   4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

   1. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

   2. Such payments shall not reduce any Designated construction Project General Aggregate Limit.

ML 10 97 (04 99)                                                                                          Page 1 of 2

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Limits of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

POLICY NUMBER: 04-GL-000722792

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Designated Location(s): | ALL LOCATIONS OWNED AND OPERATED BY YOU |
|---|---|
| | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SEC-TION I), which can be attributed only to operations at a single designated "location" shown in the Schedule above:

   1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

   2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

      a. Insureds;

      b. Claims made or "suits" brought; or

      c. Persons or organizations making claims or bringing "suits".

   3. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such pay-ments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

   4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SEC-TION I), which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

   1. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Opera-tions Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

# TEXAS DISCLOSURE FORM

# (EXCLUDING LARGE RISKS)

# EXTERIOR INSULATION AND FINISH SYSTEM

We (the insurance company) acknowledge that the terms, conditions and coverages provided in this policy have been negotiated in good faith with you (the insured). You have agreed to accept such terms, conditions and coverages.

The following additional exclusions and/or limitations, which may not have been in your previous policy are included in this policy:

**Type of Coverage**
**Limited or Excluded**

Insurance provided by endorsement **ML 1001 - Exterior Insulation and Finish System Endorsement** shall not apply if "your work" was completed more than 365 days prior to the date of the "occurrence".

Other insurance companies may or may not have these exclusions and/or limitations in their current policy.

# TEXAS DISCLOSURE FORM
# (EXCLUDING LARGE RISKS)
## LEAD

We (the insurance company) acknowledge that the terms, conditions and coverages provided in this policy have been negotiated in good faith with you (the insured).  You have agreed to accept such terms, conditions and coverages.

The following additional exclusions and/or limitations, which may not have been in your previous policy are included in this policy:

**Type of Coverage**
**Limited or Excluded**

**ML 1439 - Exclusion-Lead**

Other insurance companies may or may not have these exclusions and/or limitations in their current policy.

# TEXAS DISCLOSURE FORM
# (EXCLUDING LARGE RISKS)
# ASBESTOS

We (the insurance company) acknowledge that the terms, conditions and coverages provided in this policy have been negotiated in good faith with you (the insured). You have agreed to accept such terms, conditions and coverages.

The following additional exclusions and/or limitations, which may not have been in your previous policy are included in this policy:

**Type of Coverage**
**Limited or Excluded**

**ML 1344 - Exclusion-Asbestos**

Other insurance companies may or may not have these exclusions and/or limitations in their current policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# RESIDENTIAL CONTRACTOR EXTENSION A
# HOMEBUILDERS DIVISION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Exclusion j. of COVERAGE A (SECTION I)** is hereby replaced by the following:

This insurance does not apply to:

j.    "Property damage" to:

   **(1)**  Property you own, rent or occupy;

   **(2)**  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises. This exclusion does not apply if the premises are "your work" and were not occupied, rented or held for rental by you for more than a period of 12 consecutive months immediately after completion of the premises;

   **(3)**  Property loaned to you, but this exclusion does not apply to liability assumed under a sidetrack agreement;

   **(4)**  Personal property in you care, custody or control, but this exclusion does not apply to liability assumed under a sidetrack agreement;

   **(5)**  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arise out of those operations. This exclusion does not apply to liability assumed under a sidetrack agreement; or

   **(6)**  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. This exclusion does not apply to liability assumed under a sidetrack agreement or to "property damage" included in the "products-completed operations hazard".

All other conditions remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# FUNGUS, MILDEW AND MOLD EXCLUSION

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury" or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any fungus, mildew, mold or resulting allergens;

2. Any costs or expenses associated, in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal or any obligation to investigate or assess the presence or effects of any fungus, mildew, mold or resulting allergens; or

3. Any obligation to share with or repay any person, organization or entity, related in any way to items **1** and **2.**

# TEXAS DISCLOSURE FORM

# (EXCLUDING LARGE RISKS)

## SILICA OR SILICA-RELATED DUST

We (the insurance company) acknowledge that the terms, conditions and coverages provided in this policy have been negotiated in good faith with you (the insured). You have agreed to accept such terms, conditions and coverages.

The following additional exclusions and/or limitations, which may not have been in your previous policy are included in this policy:

**Type of Coverage**
**Limited or Excluded**

**CG 2196 – Silica or Silica-Related Dust Exclusion**

Other insurance companies may or may not have these exclusions and/or limitations in their current policy.

# EXCLUSION OF HAZARDS OTHERWISE INSURED

## (SEPARATE POLICIES ISSUED)

This endorsement modifies the insurance provided under the following:

> Commercial General Liability Coverage Form
> Products/Completed Operations Coverage Form
> Contractual Liability Coverage Form
> Garage Coverage Form
> Farm and Ranch Owners Policy

If you have any other insurance policies issued by us or one of our affiliated companies, which provide one or more of the following coverages:

> Comprehensive General Liability Coverage
> Commercial General Liability Coverage Form
> Products/Completed Operations Coverage Form
> Contractual Liability Coverage Form
> Garage Coverage Form
> Farm and Ranch Owners Policy

under a separate policy and on a primary basis, this insurance does not apply in any manner to any loss which is covered under the other policies.

In addition, this policy does not apply when the other policy(ies) has exhausted its limits.

_____
**Authorized Representative**

_____                    _____
**Named Insured/Title**                                                      **Date**

ML 13 36 (03 97)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos. This includes:

    **a.** Any supervision, instructions, recommendations, warnings or advise given or which should have been given in connection with the above; and

    **b.** Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

All other conditions remain unchanged

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# EXCLUSION - LEAD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of lead, lead particles or products containing lead, provided that the injury or damage is caused or contributed to by the hazardous properties of lead.

This includes:

a. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

All other conditions remain unchanged



NO. 2011-42562

| GRIER PATTON and | § | IN THE DISTRICT COURT OF |
| CAMILLE PATTON | § | |
| | § | |
| vs. | § | HARRIS   COUNTY, |
| | § | |
| BLACK DIAMOND BUILDERS, L.L.P. | § | 55th   JUDICIAL   DISTRICT |

## JUDGMENT

On this the undersigned date, the above-entitled and numbered cause came on to be heard the Application of Grier Patton and Camille Patton To Confirm and Enforce the Award of Arbitrator, whereupon each party making appearance by and through their respective counsel, or Respondent BLACK DIAMOND BUILDERS, L.L.P., otherwise having been duly served with citation, wholly failed to appear and answer but defaulted herein; whereupon Petitioners evidenced their entitlement to judgment as prayed upon liquidated sums, and sufficient and adequate proof having been made in support of same and to support finding for Petitioners GRIER PATTON and CAMILLE PATTON and against Respondent, BLACK DIAMOND BUILDERS, L.L.P., to the extent hereinafter adjudged and award of judgment as hereinafter provided, and that the same being the Award of Arbitrator dated October 21, 2014. A true and correct copy of the Award of Arbitrator is attached hereto and incorporated herein by reference as Exhibit "1". The Court, upon finding that all parties in interest were duly served with notice of this proceeding and all necessary parties were before the Court, the Court did and does thereupon

ORDER, ADJUDGE and DECREE that Petitioners GRIER PATTON AND CAMILLE PATTON, shall have and recover of and from Respondent, BLACK DIAMOND BUILDERS, L.L.P., the sum of TWO MILLION NINE HUNDRED THIRTY-FIVE THOUSAND NINE

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging



EXHIBIT

F

HUNDRED FORTY-FOUR AND 00/100 DOLLARS ($2,935,944.00), payable to Petitioners

GRIER PATTON AND CAMILLE PATTON, which amount is comprised of the following:

| | |
|---|---|
| Market value without impairment ($2,250,000.00) less value of raw land ($1,129,000) | $1,121,000.00 |
| Engineering/Consulting Costs | $ 757,186.00 |
| Attorneys' Fees | $ 750,000.00 |
| Prejudgment Interest | $ 307,758.00 |
| TOTAL AWARD: | $2,935,944.00 |

In addition to the sums awarded as damages above, the following are additionally awarded as

assessed costs of arbitration proceedings against Black Diamond Builders, L.L.P.:

> The administrative fees and expenses of the American Arbitration Association (the "Association") totaling $4,775.00 and the compensation and expenses of the arbitrator(s) totaling $7,625.00 shall be borne by Black Diamond Builders LLP. Therefore, Black Diamond Builders LLP shall reimburse to Grier and Camille Patton the additional sum of $4,962.50, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Grier and Camille Patton.

> The above sums are to be paid on or before forty five (45) days from the date of this Award. Post-judgment interest of six percent (6%) shall begin to accrue if payment is not made within forty five (45) days of the date of this Award.

It is further ORDERED that Petitioners are awarded post-judgment interest upon all sums

awarded in this Judgment at the rate of __five__ percent ( __5__ %) per annum

commencing thirty (30) days after the date of this Judgment until fully paid; all other costs

incurred in connection with the Petition are adjudged against the party having incurred same,

which having been paid and discharged, no writ or other process need issue; and in the event of

failure of full and timely payment, all sums due hereunder shall, at the election of Petitioners, be

- 2 -

then and thereupon fully due and payable, being thus accelerated without requirement of any further action or notice.

Petitioners shall be allowed and are hereby granted all writs and processes necessary for enforcement hereof according and subject to these provisions, including execution and garnishment to the extent allowed by law.

This is a full and final Judgment as to all parties and issues adjudicated and all relief not expressly granted herein is denied.

**SIGNED** this _____ day of _____, 2015.

_____

JUDGE PRESIDING

APPROVED IN SUBSTANCE AND IN FORM:

SCHLANGER, SILVER, BARG & PAINE, L.L.P.

BY: */s/ Michael A. Hirsch*
    MICHAEL A. HIRSCH

    State Bar No.: 09718200
    109 North Post Oak Lane, Suite 300
    Houston, Texas 77024
    (713) 735-8583 (Direct)
    (713) 785-1700 (Main)
    (713) 785-2091 (Facsimile)
    mhirsch@ssbplaw.com

    ATTORNEY FOR PLAINTIFFS
    GRIER PATTON and CAMILLE PATTON

- 3 -

## AMERICAN ARBITRATION ASSOCIATION

## CONSTRUCTION INDUSTRY ARBITRATION TRIBUNAL

In the Matter of the Arbitration between

Re: AAA NO. 70 20 1100 00004

Grier Patton and Camille Patton
And
Black Diamond Builders, LLP

## AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the parties, and dated August 17, 2004 and having been duly sworn and having duly heard the proofs and allegations of the parties hereby, AWARD, as follows:

### PREAMBLE

This arbitration case was filed in December, 2010. After significant prehearing involvement, litigation and appellate rulings, the parties remaining in the arbitration, Grier Patton, Camille Patton and Black Diamond Builders, LLP, were scheduled for final hearing on the merits. The parties agreed to submit the matter to the Arbitrator with the stipulation that the Award be within the following limits: $4,275,000.00 to Claimants on the high side and $640,000.00 to Claimants on the low side.

Opening statements and evidence delivery took place on August 25, 2014. The Arbitrator reviewed the pleadings and the evidence in preparation for the subsequent hearing on the merits, which took place on September 3, 2014. Evidence in the form of expert reports, depositions and videos were received, and argument of counsel was heard.

### REASONS FOR AWARD

Claimants are homeowners who allege significant damage to their residence due to foundation issues. The claim before me is against the homebuilder/general contractor.

The evidence showed that there was significant differential movement of the foundation and resultant damage to the residence of Claimants. Respondent and its experts conceded certain



**EXHIBIT**

1

70 20 1100 0004      Page 1

damage to the residence but Claimants and Respondent did not agree on the method of repair or the cost of repair.

Other design and contracting entities were involved in the building of the residence and pool in question. Those parties and Claimants were involved in a companion litigation, but were ultimately not in the instant arbitration in front of me, as there were no arbitration clauses involving those parties.

The evidence showed by a preponderance of the evidence that both design and construction errors led to Claimants' damage. Of paramount significance in this case is Respondent's failure to build the house slab/foundation. to the elevation shown on the plans, preventing positive drainage away from the structure, thereby allowing water from various sources to access the expansive clay soils beneath the foundation. Evidence of both contractual requirement and applicable code showed that the foundation should have been constructed significantly higher than it was (as much as 17" higher). Respondent's failure to build the foundation element to specification or to code resulted in significant resulting damage to the remainder of the house (settlement of 1.5" and heave of 3", in different locations). Respondent's actions seriously affected the work of other contractors on the project (including both the subcontractors of Respondent, and the separate contractors hired by Claimant). The resulting damage to the structure was significant.

Engineering experts for both parties, all of whom were qualified (and the other parties involved in the companion litigation) agreed that a lift of the house was a proper remedy and repair. The scope of that repair, however, was contested. Claimants proposed lifting the entire house, removing contaminated soil and replacing same with select fill. Respondent also proposed lifting a portion of the house, but not as high as Claimants' proposal. The difference in the cost of the repair models was, not surprisingly, significant.

The preponderance of the evidence favored Claimants on this issue. However, Claimants' proposed damages to repair the house were more than the market value of the home. Consequently, Respondent's argument of economic waste was well taken. I therefore allowed a damage number of the unrepaired value of the home (as established by evidence put forth by Respondent), less the value of the underlying land, as the measure of damages.

I found that Claimants properly submitted their claims under the Texas Residential Construction Liability Act. The evidence showed Respondent did not avail itself of some of the protection afforded by the Act (e.g. making an offer of settlement) which might have limited Claimants' recoverable damages. I found there was a major structural defect as a result of Respondent's actions. The Act provides for recovery of engineering and consulting fees, and I allowed the amount proved by Claimant relative to the issues and parties involved in this arbitration. Further, the Act allows recovery of attorney fees. I allowed a significant (though reasonable in this particular case) amount of fees relative to the issues and parties involved in this arbitration. The case had been hotly contested for approximately four (4) years. There were numerous dispositive motions, rulings, and at least one trip to the appellate courts. Claimant

I further allowed prejudgment interest at the statutory rate, from the date the evidence showed the Claimant's discovered the issue, June 1, 2009, less 180 days.

While the evidence showed involvement of other entities in both the design and construction issues associated with this residence and its problems, the evidence clearly established Respondent Black Diamond's significant culpability as to Claimants. I found Black Diamond's actions as the main building contractor (particularly its negligent failure to build the slab elevation to plans or to code) to equate to at least 51% of the total liability. This assessment of liability and negligence (both negligence of its own work and negligent supervision of others) against Black Diamond, resulting in property damage to Claimant, is a fair and equitable assessment, based on the evidence presented.

Therefore, I hereby AWARD as follows:

Black Diamond Builders, LLP shall pay to Grier and Camille Patton the total sum of $2,935,944.00 itemized as follows:

| | |
|---|---|
| Market value without impairment ($2,250,000) less value of raw land ($1,129,000) | $1,121,000.00 |
| Engineering/Consulting Costs | $ 757,186.00 |
| Attorneys Fees | $ 750,000.00 |
| Prejudgment Interest | $ 307,758.00 |
| TOTAL AWARD: | $2,935,944.00 |

The administrative fees and expenses of the American Arbitration Association (the "Association") totaling $4,775.00 and the compensation and expenses of the arbitrator totaling $7,625.00 shall be borne by Black Diamond Builders LLP. Therefore, Black Diamond Builders LLP shall reimburse to Grier and Camille Patton the additional sum of $4,962.50, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Grier and Camille Patton.

The above sums are to be paid on or before forty five (45) days from the date of this Award. Post-judgment interest of six percent (6%) shall begin to accrue if payment is not made within forty five (45) days of the date of this Award.

Certified Document Number: 63807487 - Page 6 of 7

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

SIGNED: _____       DATED: _10/21/14_
          Richard P. Flake, Arbitrator

G:\WPDOCS\0611547\Award.doc

Certified Document Number: 63807487 - Page 7 of 7



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 25, 2015

Certified Document Number:        63807487 Total Pages: 7

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com



NO. 2011-42562

GRIER PATTON and
CAMILLE PATTON

vs.

BLACK DIAMOND BUILDERS L.L.P.

§
§
§
§
§
§

IN THE DISTRICT COURT OF

HARRIS   COUNTY,   TEXAS

55th   JUDICIAL   DISTRICT

*PS*
*TuRNX*
*APREX*

## ORDER FOR TURNOVER RELIEF AND APPOINTMENT OF RECEIVER

On this day came on to be heard Applicants' Application for Turnover Relief And Appointment of Receiver of Plaintiffs-in-Judgment, Grier Patton and Camille Patton (hereinafter "Applicants"). After the Court's review of the papers herein on file and all testimony and evidence, became of the opinion that Applicants are entitled to collect upon a final, valid and subsisting judgment against Defendant-in-Judgment, Black Diamond Builders, L.L.P. (hereinafter "Respondent"). The Court finds that Applicants have, prior to filing the Application For Turnover And For Appointment of Receiver, undertaken extra-judicial post-judgment discovery, without recovery on the Judgment, and without determining any other non-exempt assets.

The Court finds that Applicants have made a good faith effort to collect the Judgment but were unsuccessful prior to filing the Application For Turnover After Judgment And For Appointment of Receiver.

The Court finds that the nature of the asset pursuit in satisfaction of Judgment has necessitated the appointment of a Receiver to facilitate the collection of the Judgment to which Respondent is legally entitled.

The Court finds that Applicants have a good faith reason to believe that Respondent owns property described as a claim and/or "chose in action" owned by Black Diamond Builders, L.L.P. against its insurance carrier, Mid-Continent Casualty Company, Policies Numbered 04-GL-000554256, 04-GL-000596014, 04-GL-000638365, 04-GL-000722792, and 04-GL-000680691, and any other such general liability policy coverage contracted by Black Diamond Builders, L.L.P. and in full force and effect with Mid-Continent Casualty Company during the

868300.1

| EXHIBIT |
| --- |
| G |

period beginning on or before August 17, 2004 and at all relevant times thereafter, that cannot be attached or levied on by ordinary legal process and which are not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

The Court further finds that Applicants are entitled to aid from this Court and it is therefore, ORDERED, ADJUDGED AND DECREED:

1.     That David A. Fettner, whose address is Fettner Thompson, 6700 Sands Point Drive, Houston, Texas 77074; telephone: 713-626-7277 is hereby appointed Receiver in this cause pursuant to the Texas Turnover Statute to serve after posting bond in the sum of $100.00 and taking the oath of office.

2.     That Respondent is Ordered to turnover and deliver custody to the Receiver within ten (10) days from Respondent's receipt of a copy of this Order, the documents described as follows:

   a.   Applicable Mid-Continent Casualty Company GL policy(ies) and all attachments and amendments thereto;

   b.   Premium billings;

   c.   Copies of policy/premium payments;

   d.   Any and all notices to and from Mid-Continent Casualty Company relating to policy coverage of defense costs and/or liability upon Plaintiffs' claims in this lawsuit; and

   e.   Any and all correspondence for reservation of rights by Mid-Continent Casualty Company, together with all other documents and records requested by the Receiver, and to pay the proceeds to the Receiver to the extent required to satisfy the amount owed under the Judgment and this receivership.

3.     That to the extent owed pursuant to the final Judgment and the subject of this turnover and receivership, Respondent turnover to the receiver at the Receiver's address stated above, within ten (10) days of Respondent's receipt of a copy of this Order, all proceeds of said insurance, and is hereby Ordered to continue to turnover to the Receiver at the Receiver's address all value receive in connection with the said Mid-Continent Casualty Company insurance contract(s) and incidents of ownership and/or value, within three(3) days from Respondent's receipt and possession of such

-2-

property, if, as and when Respondent becomes in receipt and possession of any such property.

4.    Receiver shall have all the power and authority to take possession of the above referenced Mid-Continent Casualty Company insurance policy(ies) and benefits.

5.    Receiver shall have the power to subpoena from Respondent, third parties and witnesses production of documents, things and information including but not limited to matters concerning the existence, location, and/or value of the foregoing Mid-Continent Casualty Company insurance policy(ies) and benefits/assets.

6.    That any person or any agent of any person, with actual notice of this Order is not to interfere with any property in control of the Receiver or subject to this Order, and is further Ordered not to interfere with the Receiver in the carrying out of any duty under this Order. Third parties are hereby notified that the Receiver, to the exclusion of the Respondent, is the party entitled to possess, sell, liquidate and otherwise deal with the Mid-Continent Casualty Company insurance policy(ies) and benefits/assets and once any third party receives notice of this order, they may be subject to liability should they release any said property to Respondent unless directed by the Receiver or the court.

7.    That it is hereby ordered that Receiver pay himself as receiver's fees an amount later determined to be a fair, reasonable and necessary fee for the Receiver.

8.    Receiver shall file a Release of Judgment with the Harris County Clerk within ten (10) days of collection and satisfaction of the Judgment and all costs and fees incurred in collection of said Judgment.

9.    The Receiver shall file a Final Accounting with the Court within thirty (30) days of the filing of said Release of Judgment.

10.   All authority of the Receiver shall terminate thirty (30) days after the filing of said Final Accounting. The Final Accounting is subject to approval by the Court, and Receiver's bond will be released only upon approval by the court of said Final Accounting.

-3-

11. **NOTICE: YOU HAVE THE RIGHT TO HIRE AN ATTORNEY TO ASSIST IN COMPLIANCE WITH THIS TURNOVER ORDER.**

SIGNED on ____March 16_____, 2015.

_____
JUDGE PRESIDING

**APPROVED AS TO FORM:**

SCHLANGER, SILVER, BARG & PAINE, L.L.P.

By: /s/ *Michael A. Hirsch*
 MICHAEL A. HIRSCH
 State Bar No.: 09718200
 109 North Post Oak Lane, Suite 300
 Houston, Texas 77024
 (713) 785-1700 (main
 (713) 785-2091 (Facsimile)
 E-mail: mhirsch@ssbplaw.com

 ATTORNEY FOR PLAINTIFFS/APPLICANTS
 GRIER PATTON and CAMILLE PATTON

-4-

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on the 16th day of March, 2015.

Ms. Bonner S. Ball
Mr. Thomas H. Zenner
Black Diamond Builders, LLP
750 Bering Dr., Suite 130
Houston, Texas 77057

David W. Medack, Esq.
Heard & Medack, P.C.
9494 Southwest Freeway, Suite 700
Houston, Texas 77074

/s/ *Michael A. Hirsch*
MICHAEL A. HIRSCH
Attorney for Plaintiffs/Applicants

868300.1



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   March 23, 2015

Certified Document Number:        64637820 Total Pages: 5

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



## MID - CONTINENT

Mid-Continent Casualty Company  Δ  Mid-Continent Assurance Company  Δ  Oklahoma Surety Company

P.O. Box 2927 · Tulsa, OK 74101-2927  (972) 671-1070  Toll Free (800) 841-3218
FAX (918) 585-0845  claims@mcg-ins.com

April 16, 2010

**CERTIFIED MAIL # 7009 1410 0002 3074 9106**
**RETURN RECEIPT REQUESTED**
And Regular U.S. Mail

Ms. Bonner Ball
Black Diamond Builders Corp
750 Bering, Suite 130
Houston, Texas 77057

RE:  Claim Number:       1304123
     Insured           Black Diamond Builders Corp
     Date of Loss      01/15/09 (as reported by agent)
     Claimant          Grier and Camille Patton
     Loss Location     5353 Sugar Hill Drive, Houston, TX 77056

<div style="float:right; border:1px solid black; text-align:center">
**EXHIBIT**

H
</div>

Dear Ms. Ball:

Please allow this letter to acknowledge receipt of the above captioned claim notice by Mid-Continent.

Mid-Continent Casualty Company insured Black Diamond Builders Corp under policy number 04-GL-0007772792 for the policy period of 07/07/2008 to 07/07/2009. Coverage was afforded in the amount of $1,000,000 each occurrence limit with a $2,000,000 general aggregate limit and a $2,000,000 products-completed operations aggregate limit.

Coverage was subject to the Commercial General Liability Coverage Form (CG0001-1207), a $5,000 property damage liability per claim Deductible Liability Insurance (CG0300-0196) endorsement, an Exclusion - Damage to Work Performed by Subcontractors on Your Behalf (CG2294-1001) endorsement, a Residential Contractor Extension A Homebuilders Division (ML1191-0400) endorsement, an Exclusion – Injury or Damage From Earth Movement (ML1003-1104) endorsement, a Fungus, Mildew and Mold Exclusion (ML1217-1104) endorsement, and an Exterior Insulation and Finish System (ML1001-1104) endorsement.

The business description of the named insured is homebuilder.

We do not have sufficient information to enable us to determine whether Black Diamond Builders Corp is covered under the above policy for liability resulting from this claim. In order to protect your interest, we shall make an immediate investigation. If it should develop that Black Diamond Builders Corp is not covered by this policy, it is understood that by taking this action, the Company does not waive its right to deny coverage. The Company advises Black

*member of* GREAT AMERICAN
INSURANCE GROUP

Claim Number 1304123                                                                                    2

Diamond Builders Corp. that adjusters and/or attorneys may be called upon to investigate issues
dealing with liability and damages, as well as issues of coverage. Information that is gathered by
these adjusters or attorneys would be used to determine whether there is coverage for this claim.
Accordingly, these adjusters or attorneys may have a conflict of interest with Black Diamond
Builders Corp, which is entitled to retain its own counsel, at its own expense, to assist and advise
it in matters of coverage and its rights under the policy.

Please refer to your policy number 04-GL-000772792 for the policy period of 07/07/2008 to
07/07/2009, and specifically the Commercial General Liability Coverage Form CG0001-1207,
which reads as follows:

## SECTION I – COVERAGES
## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of
"bodily injury" or "property damage" to which this insurance applies. We will have the right and
duty to defend the insured against any "suit" seeking those damages. However, we will have no
duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property
damage" to which this insurance does not apply. We may, at our discretion, investigate any
"occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance;
and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in
the payment of judgments or settlements under Coverages A or B or medical expenses under
Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly
provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the
"coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An
Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or
claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If
such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily
injury" or "property damage" occurred, then any continuation, change or resumption of such
"bodily injury" or "property damage" during or after the policy period will be deemed to have
been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the
policy period, known to have occurred by any insured listed under Paragraph 1. of Section II –
Who Is An Insured or any "employee" authorized by you to give or receive notice of an
"occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or
"property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the
earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any
"employee" authorized by you to give or receive notice of an "occurrence" or claim:

Claim Number 1304123

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

In conjunction with this insuring agreement, the following definitions are applicable to Coverage Form CG0001-1207:

## SECTION V – DEFINITIONS

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Please note that the following exclusions under Coverage Form CG0001-1207, and any modifying endorsements to them within policy 04-GL-000000772792, which read as follows, may apply and further diminish coverage:

## 2. Exclusions

a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and

Claim Number: 1304123                                                                                                  4

necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### f. Pollution

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

### ML 11 91 04 00
### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY
#### RESIDENTIAL CONTRACTOR EXTENSION A
#### HOMEBUILDERS DIVISION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

Exclusion j. of COVERAGE A (SECTION I) is hereby replaced by the following:

This insurance does not apply to:

### j. Damage To Property

"Property damage" to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations; if the "property damage" arises out of those operations. This exclusion does not apply to liability assumed under a sidetrack agreement; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. This exclusion does not apply to liability assumed under a sidetrack agreement or to "property damage" included in the "products-completed operations hazard".

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### CG 22 94 10 01
### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
#### EXCLUSION - DAMAGE TO WORK PERFORMED BY
#### SUBCONTRACTORS ON YOUR BEHALF

Claim Number 1304123                                                                                    5

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion l. of Section I.- Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

2. Exclusions

This insurance does not apply to:

l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1). A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for; the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3). "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Finally, policy number 04-GL-000000772792 contains the following exclusionary endorsements which may also apply:

ML 10 03 11 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

EXCLUSION - INJURY OR DAMAGE FROM EARTH MOVEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" arising out of, caused by, resulting from, contributed to, aggravated by, or related to earthquake, landslide, mudflow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting or any other movement of land, earth or mud.

All other conditions remain unchanged.

Claim Number 1304123

## ML 12 17 11 04
### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY
### FUNGUS, MILDEW AND MOLD EXCLUSION

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal or advertising injury" or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any fungus, mildew, mold or resulting allergens;

2. Any costs or expenses associated, in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal or any obligation to investigate or assess the presence or effects of any fungus, mildew, mold or resulting allergens; or

3. Any obligation to share with or repay any person, organization or entity, related in any way to items 1 and 2.

## ML 10 01 11 04
### EXTERIOR INSULATION AND FINISH SYSTEM ENDORSEMENT

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Unless so indicated below, the "Exterior Insulation and Finish System Hazard" is included within the Limit of Insurance.

☐ A. If so indicated, the "Exterior Insulation and Finish System Hazard" is limited to:

$ _____ Aggregate

$ _____ Deductible Per Claim

☒ B. If so indicated, this insurance does not apply to "Property Damage" arising out of the "Exterior Insulation and Finish System Hazard".

**Definition**

1. "Exterior Insulation and Finish System Hazard" means the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system when performed by you or on your behalf; or

Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used on any part of that structure when performed by you or on your behalf.

2. "Exterior Insulation and Finish System" means:

a. A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

b. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

c. A reinforced base coat; and

d. A finish coat providing surface texture and color.

All other conditions remain unchanged.

The Company reserves the right to rely on policy definitions, limitations, conditions and/or exclusions in the event continued investigation, litigation and/or discovery give rise to other allegations or facts which are not covered under the policy. If any pleadings are filed, the Company asks that Black Diamond Builders Corp forward copies of those pleadings

Claim Number 1304123                                                              7

immediately. Further, if Black Diamond Builders Corp becomes aware of the development of any new facts which affect the contents of this letter, it will be the responsibility of Black Diamond Builders Corp to provide us with that information.

Enclosed is a copy of a Builder Questionnaire form for your review and completion. Please fill out the pertinent portions of the Questionnaire and include a copy of any **contract agreement** with the **homeowner** filing the **claim** and any **contracts** with **potentially liable** subcontractors. Further, please include any copies of any certificates of insurance with the subcontracts.

We would like to thank you in advance for your anticipated cooperation and assistance in this matter.

Sincerely,

Claude Husbands
Senior Claims Representative

CTH: vjl

CC:    Ms. Bonner Ball
       Black Diamond Builders Corp
       750 Bering, Suite 130
       Houston, Texas 77057

CC:    Hotchkiss Insurance Agency, Inc.
       13105 NW Freeway, Suite 850
       Houston, TX 77740-6312



**RECEIVED**

**M I D - C O N T I N E N T**

FEB 17 2012

Mid-Continent Casualty Company ▲ Mid-Continent Assurance Company ▲ Oklahoma Surety Company

**HEARD & MEDACK, PC.**

P.O. Box 2927  Tulsa, OK 74101-2927  (972) 671-1070  Toll Free (800) 841-3218
FAX (918) 586-0845   claims@mcg-ins.com

February 15, 2012                **DOCUMENTS REQUESTED**

**CERTIFIED MAIL# 7010 0780 0000 7454 9660**
**RETURN RECEIPT REQUESTED**
And Via Regular U.S. Mail

Thomas Zenner
Black Diamond Builders Corp.
750 Bearing, Suite 130
Houston, TX 77057

**CERTIFIED MAIL# 7010 0780 0000 7454 9677**
**RETURN RECEIPT REQUESTED**
And Via Regular U.S. Mail

David W. Medack, Esq.
Heard & Medack, PC
9494 Southwest Freeway, Suite 700
Houston, TX 77074

RE:   Claim File Number    :    1304581
      Insured              :    Black Diamond Builders, LLP
      Plaintiffs           :    Grier and Camille Patton
      District Number      :    2011-42562
      Arbitration Number   :    Unknown

Dear Mr. Zenner and attorney Medack:

Mid-Continent Casualty Company acknowledges receipt of attorney Hirsch's March 29, 2010 demand letter and Kescorp March 22, 2010 inspection report. These documents were received at the Mid-Continent Casualty Company Dallas claim office on February 2, 2012 and was our first notice of this claim.

Subsequent to our discussion with attorney Medack, we were provided with Claimant's Original Complaint filed in arbitration and styled: *Grier Patton and Cameille Patton vs. Black Diamond Builders L.L.P., f/k/a Black Diamond Builders, L.L.P., Bonner S. Ball, individually, Thomas H. Zenner, individually, Rallin M. Welch, individually, Michael Skoller, P.E., individually, and National Structural Engineering, Inc., Dawson-Estes, Inc., Lawrence C. Estes. Jr. individually, Richard P. Dawson, individually, and Monarch Pools, Inc.*

Further, subsequent to receipt of the AAA claim, attorney Medack provided Plaintiffs Original Petition For Damages, Jury Demand and TRCP~194 Request For Disclosures filed in the 152nd Judicial District Court of Harris County in Cause Number 2011-42562. The Plaintiffs and

MEMBER OF **GREATAMERICAN.** INSURANCE GROUP

**EXHIBIT**
I

Defendants are the same as those listed in the AAA document. Also, attorney Medack advised that the only remaining Defendant in the AAA litigation is Black Diamond Builders, L.L.P. f/k/a Black Diamond Builders, L.L.P. **Please advise if this information is correct and provide the Amended AAA Pleading.**

This is to advise that Mid-Continent Casualty Company will not participate in the defense of the individual defendants or Black Diamond Builders in either action at this time. We will investigate the tender under reservation of rights and advise of our position in writing. Mid-Continent Casualty Company agrees to reimburse its insured for their reasonable and necessary legal fees and expenses incurred in their defense, from the date of tender, should we determine that the allegations within the State Complaint and AAA matter trigger a duty to defend under this subject policy.

Mid-Continent Casualty Company takes no position with regard to the truth or falsity of the allegations within the Pleadings. However, for the purpose of informing you of the coverage issues, we must assume that the allegations are true. Mid-Continent Casualty Company's position is guided by the allegations within the Pleadings, coupled with the terms, conditions, definitions, exclusions and provisions of the referenced policy.

We will examine this general liability policy in our analysis:

Mid-Continent Casualty Company issued general liability policy number GL-000596014 to named insured Black Diamond Builders, LLP, Black Diamond Development, with a policy period from 07/07/2005 to 07/07/2006 and incorporating $1,000,000 each occurrence limit of liability subject to a $5,000 per claim property damage liability deductible, pursuant to commercial general liability Coverage Form CG0001 (12/04). The business description is home builder and the form of business is corporation. The extended named insureds include but are not limited to Black Diamond Builders LLP.

Referring to Plaintiff's Original Petition, they state that they retained Black Diamond Builders, L.L.P., (BLACK DIAMOND), to construct their home. They state that BLACK DIAMOND was responsible to build their home per specifications, plans and drawings from Skoller, according to codes, rules and regulations. They claim that neither was accomplished or, alternatively was done negligently. Further, they state that specific requirements in the plans and requirements of the material suppliers were ignored, disregarded or not enforced.

Also, they state that BLACK DIAMOND is a Limited Liability Partnership and that the LLP was inactive for substantial periods of time during the period of contracting and performance, and allege that the partners are personally, jointly, and severely liable for the damages arising from the claims being made.

They state that since completion of the construction, they determined that substantial and multiple construction defects exist. They complain of interior cosmetic distress which is