**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **GRIER PATTON and CAMILLE PATTON,** | § § § | |
| **Plaintiffs/Judgment-Creditors** | § § | |
| **AND** | § § | **CIVIL ACTION NO. 4:15-cv-1371** |
| **DAVID A. FETTNER,** | § § | |
| **Plaintiff/Judgment-Receiver** | § § | |
| **v.** | § § | |
| **MID-CONTINENT CASUALTY COMPANY,** | § § § | |
| **Defendant/Judgment-Debtor.** | § | |

**DEFENDANT/JUDGMENT-DEBTOR MID-CONTINENT CASUALTY COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant/Judgment Debtor, Mid-Continent Casualty Company (hereinafter "Mid-Continent"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(c), hereby files this Motion for Judgment on the Pleadings.

## I.
## INTRODUCTION

This case involves homeowners who obtained an arbitration award and judgment against a homebuilder and now seek to collect from the homebuilder's insurer. The pleadings make clear that the legal issues are ripe to be determined by this Court. The Mid-Continent insurance policies issued to the homebuilder do not provide insurance coverage for the damages awarded by the arbitrator because of the applicability of two business-risk exclusions.

## II.
## SUMMARY OF THE ARGUMENT

It is impossible for the plaintiffs to recover in this action against Mid-Continent because the Mid-Continent policies do not provide insurance coverage for damages to a general contractor's own work.  As the arbitration award makes clear, this is precisely the damages that the plaintiffs now seek to recover.  Because this is apparent from the pleadings, this Court may rule as a matter of law that there is no insurance coverage for the plaintiffs' judgment.

Typically, the insured has the burden of first demonstrating coverage.  Here, for purposes of this motion, Mid-Continent assumes that the insuring agreement is triggered.  In other words, Mid-Continent will assume that this matter involves "property damage" caused by an "occurrence" and such "property damage" occurred during the "policy period."  Even if the plaintiffs could satisfy their burden of establishing coverage, it would still be impossible for the plaintiffs to recover here because the Mid-Continent policies specifically preclude coverage for the exact damages that the plaintiffs seek—damages for the insured's own work.

Notably, this case is extremely similar to a recent case from this Court—*Feaster v. Mid-Continent Casualty Co.*, No. 4:13-cv-3220, 2015 WL 164041 (S.D. Tex. Jan. 2015).  In that case, the Honorable Kenneth Hoyt concluded that the Mid-Continent insurance policies did not provide coverage for a judgment involving damages to a house caused by a homebuilder.  This case demands the same result.

## III.
## STATEMENT OF THE FACTS

### A.    Background

The following facts come directly from the plaintiffs' original petition and exhibits attached thereto.  This case involves the plaintiffs' efforts to recover from Mid-Continent for an

arbitration damages award against Mid-Continent's insured, Black Diamond.  *See* Original Petition at 10.  In that arbitration, the plaintiffs, Grier and Camille Patton ("the Pattons") claimed that Black Diamond caused significant damage to their home.  *See* Exhibit F to Plaintiff's Original Petition (Award of Arbitrator).  Black Diamond was the homebuilder/general contractor.

The Pattons filed their arbitration case against Black Diamond on December 22, 2010. *See* Exhibit F to Plaintiff's Original Petition.  The arbitrator concluded that the evidence showed that there was significant differential movement of the foundation and resultant damages to the Pattons' residence.  *Id.* at 2.  The parties did not agree on the method of repair or the cost of repair.  *Id.*

The arbitrator found that both design and construction errors led to the Pattons' damage. *Id.*  According to the arbitrator, Black Diamond's failure to build the house slab/foundation to the elevation shown on the plans prevented positive drainage away from the structure, thereby allowing water from various sources to access the expansive clay soils beneath the foundation. The arbitrator also found that the foundation should have been constructed significantly higher than it was (as much as 17" higher).  *Id.*  Black Diamond's failure to build the foundation to specification or to code resulted in significant damage to the remainder of the house— specifically settlement of 1.5" and heave of 3" in different locations.  *Id.*

According to the arbitrator, while the evidence showed involvement of other entities in both the design and construction issues, the evidence established Black Diamond's significant culpability.  *Id.* at 3.  The arbitrator also found Black Diamond's actions as the main building contractor to equate to at least 51% of the total liability.  *Id.*  However, the Pattons' proposed damages to repair the house were more than the market value of the home.  *Id.*  Consequently,

the arbitrator agreed with Black Diamond's argument of economic waste and permitted a damage number of the unrepaired value of the home less the value of the underlying land as the measure of damages.  *Id.*

According to the Award of Arbitrator dated October 21, 2014, Black Diamond is obligated to pay to the Pattons the total sum of $2,935,944.00 itemized as follows:

| | |
|---|---:|
| Market value without impairment ($2,250,000) less value of raw land ($1,129,000) | $1,121,000.00 |
| Engineering/Consulting Costs | 757,186.00 |
| Attorneys Fees | 750,000.00 |
| Prejudgment Interest | 307,758.00 |
| **TOTAL AWARD** | **$2,935,944.00** |

*Id.*  The arbitrator stated that the above sums are to be paid on or before forty-five (45) days from the date of this Award.  *Id.*  The arbitrator also stated that post-judgment interest of six percent (6%) shall begin to accrue if payment is not made within forty-five (45) days of the date of this Award.  *Id.*

The Pattons subsequently obtained a judgment against Black Diamond on January 12, 2015.  *See* Exhibit F to Plaintiff's Original Petition.  On March 16, 2015, the Pattons obtained a turnover order, which stated the Pattons "have all the power and authority to take possession of the above-referenced Mid-Continent Casualty Company insurance policy(ies) and benefits."  *See* Exhibit G to Plaintiff's Original Petition.

On April 13, 2015, the plaintiffs filed suit against Mid-Continent alleging: (1) bad faith; (2) breach of contract; (3) third-party beneficiary breach of contract; and (4) claim under DTPA and Texas Insurance Code.  *See* Plaintiffs' Original Petition.  The plaintiffs are seeking indemnity for the final judgment confirming arbitration award in the plaintiff's favor in the underlying action.  *Id.*

### B.     Mid-Continent Insurance Policies

Plaintiffs seek to recover for the judgment from Mid-Continent pursuant to the terms of five Mid-Continent insurance policies to Black Diamond.  Mid-Continent issued the following five insurance policies to Black Diamond:

    (1) 04-GL-000554256 with policy period of July 7, 2004 to July 7, 2005
    (2) 04-GL-000596014 with policy period of July 7, 2005 to July 7, 2006
    (3) 04-GL-000638365 with policy period of July 7, 2006 to July 7, 2007
    (4) 04-GL-000680691 with policy period of July 7, 2007 to July 7, 2008
    (5) 04-GL-000722792 with policy period of July 7, 2008 to July 7, 2009

*See* Exhibits A-E to Plaintiff's Original Petition; Exhibit A to Mid-Continent's Amended Answer.  Mid-Continent denied coverage to Black Diamond due to the applicability of specific insurance policy provisions.  *See* Exhibit I to Plaintiff's Original Petition.

## IV.
## THE MID-CONTINENT POLICIES DO NOT PROVIDE COVERAGE

### A.     Standard of Review

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).  *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009).  Thus, the inquiry "focuses on the allegations in the pleadings and not on whether the plaintiff actually has sufficient evidence to succeed on the merits."  *Id.*

In determining a motion for judgment on the pleadings, the Court must look only to the pleadings, construing such pleadings liberally and accepting all allegations contained therein as true.  *Brittan Communications Int'l Corp. v. Southwestern Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002).  A motion for judgment on the pleadings should be granted where the party opposing the motion cannot prove any set of facts that would entitle it to relief.  *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 450 n. 2 (5th Cir. 2005).  Judgment on the pleadings is

appropriate where material facts are not disputed and the only issues are questions of law. *Brittan Communications*, 313 F.3d at 904.

### B.   Construction of Insurance Policies

Under Texas law, insurance policies are construed according to general rules of contract construction to ascertain the parties' intent. *Gilbert Texas Constr., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118 (Tex. 2010); *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.,* 267 S.W.3d 20, 23 (Tex. 2008).  When interpreting an insurance policy, the Court must presume that the parties "intend what the words of their contract say."  *See Don's Bldg. Supply,* 267 S.W.3d at 23; *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 753 (Tex. 2006).  In determining the parties' intent, the Court must examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless.  *Gilbert,* 327 S.W.3d at?.  The policy's terms are given their ordinary and generally accepted meaning.  *Don's Bldg. Supply*, 267 S.W.3d at 23.  "[W]here the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction."  *Fiess,* 202 S.W.3d at 753.

### C.   Duty to Indemnify

This is a duty to indemnify case.  The insurer's duty to indemnify an insured depends on the facts actually proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy. *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co, Ltd.,* 300 S.W.3d 740, 744 (Tex. 2009).  In that case, the Texas Supreme Court stated:

> While analysis of the duty to defend has been strictly circumscribed by the eight-corners doctrine, it is well settled that the 'facts actually established in the underlying suit control the duty to indemnify. As with any other contract, breach or compliance with the terms of an insurance policy is determined not by pleadings, but by proof.

---

*Id.* at 745 (internal citations omitted). The Court in *Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010), reiterated the principle that coverage is determined by the theory of liability ultimately imposed on the insured. The *Gilbert* Court found:

> Indemnity under a liability policy depends on the actual facts and adjudicated liability, not possible scenarios that did not occur . . . coverage determinations [] depend on the *final basis for the insured's liability*.

*Id.* at 135 (emphasis added).

In this case, Plaintiffs must show that the damages awarded by the arbitrator—which are incorporated into the trial court's final judgment—are based on claims covered under the terms of the Mid-Continent Policies. *See Mid-Continent Cas. Co. v. Castagna*, 410 S.W.3d 445, 458 (Tex. Ct. App. 2013) (looking to the arbitrator's award to determine Mid-Continent's duty to indemnify the insured); *StarPak Corp. v. Commerce & Industry Ins. Co.*, No. H-11-3572, 2012 WL 43629, *1 (S.D. Fla. Jan. 9, 2012) ("the indemnification issue cannot be decided by this Court until the arbitrator determines which particular losses, if any, are included in the arbitration award"). As discussed below, Plaintiffs cannot recover from Mid-Continent in this case because none of the damages awarded by the arbitrator are covered by the Mid-Continent policies.[1]

---

[1] Mid-Continent anticipates that Plaintiffs will assert that this Court should not limit the duty to indemnify to the judgment and arbitration award but instead should consider additional evidence involved in the underlying action—including some evidence that the arbitrator may not have considered or for damages for which the arbitrator did not award. This sort of argument would lead to re-litigating the damages suffered after the arbitrator already considered the scope of Plaintiff's property damage and after the trial court issued a final order on those damages. Plaintiffs are bound by the judgment, including the arbitration award that it adopts, and should not be permitted to re-litigate the extent of damages suffered to Plaintiffs' home. *See CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002) (arbitration award has the same effect as a judgment of a court of last resort and is entitled to great deference by the courts). The arbitrator's award makes clear that the only damages awarded are those for damage to Plaintiffs' house. As discussed herein, the Mid-Continent policy precludes coverage for these damages.

---

### D.  **Burden of Proof for Insurance Coverage**

Typically, to establish a *prima facia* case for coverage, Plaintiffs bear the burden to prove that the damages awarded in the arbitration are covered under the terms of any of Defendants' policies. *National Union Fire Ins. Co. of Pittsburgh, Penn., v. Puget Plastics Corp.,* 532 F.3d 398, 401 (5th Cir. 2008); *Utica Nat'l Ins. Co. of Texas v. American Indemn. Co.,* 141 S.W.3d 198, 203 (Tex. 2004).  The burden imposed on Plaintiffs is two-fold.  First, Plaintiffs must show that the damages fall within the insuring agreement.  *Puget Plastics Corp.,* 532 F.3d at 401*; Utica Nat'l Ins. Co.,* 141 S.W.3d at 203; *Comsys Information Technology Servs., Inc. v. Twin City Fire Ins. Co.,* 130 S.W.3d 181, 198 (Tex. App. – Houston [14[th] Dist.] 2003, no pet.).  To sustain this burden Plaintiffs must show not only that each element of damages awarded in the underlying suit was for "property damage" caused by an "occurrence," but must show when the "property damage" actually occurred.  *See OneBeacon Insurance Company v. Don's Building Supply, Inc.,* 267 S.W.3d 20, 29-30 (Tex. 2008).  Second, Plaintiffs must segregate (i.e. allocate*)* between covered and non-covered losses.  *Comsys,* 130 S.W.3d at 198; *Allison v. Fire Ins. Exchange*, 98 S.W.3d 227, 258 (Tex. App. – Austin 2002, pet. granted, judgm't vacated w.r.m); *Wallis v. United Serv. Auto Assoc.,* 2 S.W.3d 300, 302-03 (Tex. App. – San Antonio 1999, pet. denied)*.*  These burdens arise by operation of law, and are not claims or defenses that Defendants must plead or prove.  *Comsys,* 130 S.W.3d at 198*; Allison*, 98 S.W.3d at 258; *Wallis,* 2 S.W.3d at 302-03.

Once an insured meets its burden, the burden of proof shifts to the insurer.  The insurer has the burden to establish that one of the policy's limitations or exclusions preclude coverage. *Puget Plastics,* 532 F.3d at 401; *Building Specialties, Inc. v. Liberty Mut. Fire Ins. Co.,* 712 F. Supp. 2d 628, 636 (S.D. Tex. 2010).  Once the insurer proves that an exclusion applies, the

burden shifts back to the insured to show that the claim does not fall under the exclusion or that an exception to the exclusion applies. *Century Sur. Co. v. Hardscape Constr. Specialties, Inc.,* 578 F.3d 262, 265 (5th Cir. 2009); *Building Specialties,*712 F. Supp. 2d at 636.

For purposes of deciding this matter on the pleadings, Mid-Continent assumes that the plaintiffs could meet their burden of demonstrating coverage under the Mid-Continent policies. However, Mid-Continent is entitled to judgment on the pleadings because the Mid-Continent policies do not provide insurance coverage for the types of damages awarded by the arbitrator because of the applicability of two business-risk exclusions.

### E.     The Mid-Continent Business-Risk Exclusions Preclude Coverage

The arbitrator awarded damages to Plaintiffs as a result of Black Diamond's defective work as the general contractor/homebuilder. The Mid-Continent policies preclude coverage for any "property damage" awarded by the arbitrator by operation of modified exclusions j.(5) and l because these exclusions preclude coverage for "property damage" to Black Diamond's own work. Although it is currently unclear as to when any "property damage" occurred to the Pattons' house, exclusion j.(5) would apply if such damage occurred while Black Diamond was building the house. On the other hand, if the "property damage" occurred after Black Diamond completed the house, exclusion l would apply. Thus, based upon the combination of these two business-risk exclusions, there can be no coverage under the Mid-Continent policies for the judgment against Black Diamond.

#### 1.     *Exclusion j.(5)*

Exclusion j.(5) precludes coverage for "property damage" if such damage occurred to the Patton's home while Black Diamond's work on the Patton's home was ongoing. Endorsement ML 11 91 (04 00) contains the following exclusionary language:

This insurance does not apply to:

**j.**     "Property damage" to:

. . .

**(5)**     That particular part of real property on which you or any contractors or subcontractors working directly on your behalf are performing operations, if the "property damage" arises out of those operations.   This exclusion does not apply to liability assumed under a sidetrack agreement;[2]

Exclusions j.(5) is one of several CGL exclusions known as the "business risk" exclusions. *Lamar Homes*, 242 S.W.3d at 10-11. *T.C. Bateson Construction Co. v. Lumbermens Mutual Casualty Co.,* 784 S.W.2d 692, 695 (Tex. App. - Houston [14th Dist.] 1989, writ denied); *Dal-Tile Corp. v. Zurich Amer. Ins. Co.,* 2004 U.S. Dist. LEXIS 14103 at *12-*13 (N.D. Tex. 2004).   The business risk exclusions are recognized as a valid limitation on coverage in general liability insurance policies:

> [T]he purpose of comprehensive liability insurance coverage is to provide protection to the insured for personal injury or property damage caused by the completed product but not for the replacement and repair of that product.   The justification for treating these risks differently is that the insured can control the quality of the goods and services he supplies, while accidental injury to property or persons exposes him to almost limitless liability. . . .   In the context of this case the exclusions are designed to protect insurers from the contractors' attempts to recover funds to correct deficiencies caused by the contractors' questionable performance. Their use demonstrates the insurers' belief that the cost of not performing well is a cost of doing business and not considered part of the risk sharing scheme for which general liability policies are written.

*T.C. Bateson,* 784 S.W.2d at 694-95 (internal citations omitted); *see also VRV Development, L.P. v. Mid-Continent Casualty Co.*, 630 F.3d 451 (5th Cir. 2011).

Exclusion j.(5) applies to "property damage" incurred while the insured is performing ongoing construction operations.   The ordinary meaning of "performing operations" is the active

---

[2] Under the Mid-Continent policies, "you" refers to Black Diamond.

performance of work.  *Mid-Continent Cas. Co. v. JHP Devel. Inc.,* 557 F.3d 207, 213 (5th Cir.

2009); *Malone v. Scottsdale Ins. Co.,* 147 F. Supp. 2d 623, 628 (S.D. Tex. 2001) (where damage

was allegedly caused by builder's failure to use proper building materials or properly construct

and install various components of the structure, insured's damages were excluded by j.(5)).

Here, exclusion j.(5) applies to all of the 'property damage" awarded by the arbitrator to

the extent "property damage" to the Patton's house (i.e., "real property") that occurred during

Black Diamond's ongoing operations.   The Pattons obtained a judgment based upon the

arbitrator's award against Black Diamond for damages to their house.  The arbitrator's award did

not discuss when the "property damage" occurred.  However, the arbitrator's award made clear

that Black Diamond was the general contractor/builder of the house.  The arbitrator's award also

makes clear that the damages awarded are limited to the Patton's house:

> Claimants are homeowners who allege **significant damage to their residence**
> **due to foundation issues**.    The claim before me is against the
> **homebuilder/general contractor [Black Diamond]**.
>
> The evidence showed that there was significant differential movement of the
> foundation and **resultant damage to the residence of Claimants**.  Respondent
> and its experts conceded certain **damage to the residence** but Claimants and
> Respondent did not agree on the method of repair or the cost of repair.
>
> . . .
>
> The evidence showed by a preponderance of the evidence that both design and
> construction errors led to Claimants' damage.  Of paramount significance in this
> case is **Respondent's failure to build the house slab/foundation to the**
> **elevation shown on the plans**, preventing positive drainage away from the
> structure, thereby allowing water from various sources to access the expansive
> clay soils beneath the foundation.  Evidence of both contractual requirement and
> applicable code showed that the foundation should have been constructed
> significantly higher than it was (as much as 17" higher).  Respondent's failure to
> build the foundation element to specification or to code resulted in significant
> resulting damage to the remainder of the house (settlement of 1.5" and heave of
> 3", in different locations).  Respondent's actions seriously affected the work of
> other contractors on the project (including both the subcontractors of Respondent,

and the separate contractors hired by Claimant). **The resulting damage to the structure was significant**.

Engineering experts for both parties, all of whom were qualified (and the other parties involved in the companion litigation) agreed that **a lift of the house was a proper remedy and repair**. The scope of that repair, however, was contested. Claimants proposed lifting the entire house, removing contaminated soil and replacing same with select fill. Respondent also proposed lifting a portion of the house, but not as high as Claimants' proposal. The difference in the cost of the repair models was, not surprisingly, significant.

The preponderance of the evidence favored Claimants on this issue. However, Claimants' **proposed damages to repair the house** were more than the market value of the home. Consequently, Respondent's argument of economic waste was well taken. I **therefore allowed a damage number of the unrepaired value of the home (as established by evidence put forth by Respondent), less the value of the underlying land, as the measure of damages**.

(Emphasis added).

As the arbitrator's award makes clear, the Pattons seek to recover for damage to their home caused by Black Diamond. Under exclusion j.(5), "that particular part of real property" on which Black Diamond was working would include the entire home (as well as foundation preparation) because the Pattons hired Black Diamond to build the home. *See Dallas Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 225 (Tex. App. – Dallas 2015); *Sw. Tank & Treater Mfg. Co. v. Mid-Continent Cas. Co.,* 243 F.Supp.2d 597, 603-04 (E.D. Tex. 2003). Next, if any "property damage" occurred during ongoing operations, then such "property damage" occurred while Black Diamond or its subcontractors "are performing operations." *See Mid–Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 213 (5th Cir. 2009). Moreover, the "property damage" suffered to the Patton's house would "arise out of" Black Diamond's operations. *See Dallas Nat'l*, 458 S.W.3d at 225. Exclusion j.(5) therefore precludes coverage for the arbitrator's award (including the consulting costs, attorneys' fees, and interest) to the extent there was "property damage" to Patton's home arose out of Black Diamond's ongoing operations.

---

2.      *Exclusion l precludes coverage if the "property damage" occurred after Black Diamond's work was complete*

The Mid-Continent policies contain the business-risk exclusion known as the "your work" exclusion.  However, the form of this exclusion is modified by endorsement GL 22 94 10 01.  The 22 94 endorsement provides:

### EXCLUSION – DAMAGE TO YOUR WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **l.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

2.      Exclusions

This insurance does not apply to:

l.      Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

The Mid-Continent policies define the term "products-completed operations hazard" as:

**16.**      "Products-completed operations hazard":

**a**.      Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)**      Products that are still in your physical possession; or

**(2)**      Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)**      When all of the work called for in your contract has been completed.

**(b)**      When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)**   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

            Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **b.**   Does not include "bodily injury" or "property damage" arising out of:

      **(1)**   The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      **(2)**   The existence of tools, uninstalled equipment or abandoned or unused materials; or

      **(3)**   Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that the products-completed operations are subject to the General Aggregate Limit.

The Mid-Continent policies define "your work" as:

22.   "Your work"

   a.   Means:

      (1)   Work or operations performed by you or on your behalf; and

      (2)   Materials, parts or equipment furnished in connection with such work or operations.

   b.   Includes:

      (1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      (2)   The providing of or failure to provide warnings or instructions.

The 22 94 endorsement modifies the standard ISO "your work" exclusion (exclusion "l") by eliminating the exception to the exclusion for work performed on behalf of the insured by subcontractors. Specifically, the ISO "your work" exclusion includes the following exception: "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

The "your work" exclusion excludes coverage for "property damage" to the insured's completed work. *Pine Oak Buildings, Inc. v. Great Am. Lloyds Ins. Co.,* 279 S.W.3d 650, 655 (Tex. 2009); *Lamar Homes,* 242 S.W.3d at 23. The exclusion precludes coverage for repairing or replacing the insured's own defective work; it does not exclude coverage for damage to other property resulting from the insured's defective work. *Wilshire Ins. Co. v. RJT Constr., LLC,* 581 F.3d 222, 226 (5th Cir. 2009). This distinction is without meaning in this case. Black Diamond was the general contractor for Plaintiffs house; therefore construction of entire house was done by Black Diamond or on its behalf by subcontractors and is Black Diamond's "work." *See, e.g., American Home Assurance Co. v. Cat Tech, L.L.C,* 2010 WL 2331395 *15-16 (S.D. Tex. 2010).

The Fifth Circuit has observed that endorsements to a policy generally supersede and control over conflicting printed terms within the main policy under Texas law. *Mid-Continent Cas. Co. v, Bay Rock Operating Co.,* 614 F.3d 105, 115 (5th Cir. 2010)(citing *Mesa Operating Co, v. Cal, Union Ins. Co.,* 986 S.W.2d 749, 754-55 (Tex. App. – Dallas 1999)). Accordingly, because the clear and stated purpose of the above-quoted endorsement is to replace the "your work" provision of the main policy and exclude damage performed by the named insured and by any subcontractors, the policy excludes all property damage to the insured builder's work arising out of it and included in the products-completed operations hazard, regardless of whether such work was performed by the Builder or a subcontractor.

Thus, three questions control whether the modified "your work" exclusion applies here: (1) Is the damage to the Patton house "property damage" under the Mid-Continent policies? (2) Is the Patton house "your work" under the Mid-Continent policies? and (3) is the Patton house included in the "products-completed operations hazard" under the policies?   Mid-Continent assumes that the answer to the first question is "yes" for purposes of this motion.   Therefore, only the second and third questions require analysis.

The Patton house is "your work" as the Mid-Continent policies define that term.   Under the Mid-Continent policies, "your work" means: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations."   The term "your work" also includes: "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and (2) the providing of or failure to provide warnings or instructions."

Here, as illustrated above, the Arbitration award makes clear that Black Diamond built the Pattons' house. Accordingly, the Pattons' house is the sum of the work or operations performed by Black Diamond or on the Black Diamond's behalf together with construction materials furnished in connection with Black Diamond's work or operations.  The Pattons' house therefore meets the definition of "your work" under the Mid-Continent policies.

Next, the Pattons' house became part of the "products-completed operations hazard" as the policies define that term when Black Diamond completed the construction on the house because the "products-completed operations hazard" includes completed operations "[w]hen all of the work called for in your contract has been completed."   And prior to this time, Black Diamond's work would be considering "ongoing" or "performing operations" (thus potentially triggering exclusion j.(5)).

Therefore, all three questions controlling the application of the modified "your work" exclusion would be answered in the affirmative if "property damage" occurred after Black Diamond completed work on the Patton's house.  As a result, the modified "your work" exclusion applies and the Mid-Continent policies provide no coverage for damages to and arising out of the Patton's house, built and sold to the Pattons by the insured Black Diamond, to the extent that those damages occurred after Black Diamond completed work on the house.

The Texas Supreme Court predicted the application of the modified exclusion l, interpreting identical policy language on certified questions from the Fifth Circuit in *Lamar Homes*.  In *Lamar Homes,* the Court concluded that damage to a home done by a builder during construction could constitute an "occurrence" under a CGL policy that resulted in "property damage" as those terms are defined in this case.  242 S.W.3d at 9-11. Then in discussing application of policy language that differentiates CGL insurance from a performance bond, the Court called specific attention to Lamar Homes, Inc.'s concession that the "your work" exclusion "would have eliminated coverage here but for the subcontractor exception" and that an endorsement exists "that may be included in the CGL to eliminate the subcontractor exception to the "your work" exclusion.  *Id.* at 12.

This exact issue was recently decided by Judge Hoyt from this Court in *Feaster v. Mid-Continent Casualty Co.*, No. 4:13-cv-3220, 2015 WL 164041 (S.D. Tex. Jan. 13, 2015), *aff'd*, No. 15-20074, 2015 WL 5050136 (5th Cir. Aug. 27, 2015).[3]  In *Feaster*, Judge Hoyt was confronted with an almost identical set of facts, where a homeowner was seeking to recover from Mid-Continent for damages to the home.  *Id.* at *1.  The homeowners alleged damage to their home as a result of the foundation.  *Id.*  The homeowners sued the general

---

[3] The Pattons and the Feasters are represented by the same counsel.

contractor/homebuilder.  *Id.*  Mid-Continent denied coverage to the homebuilder because the damage was to the homebuilder's own work.  *Id.*  The homeowners subsequently obtained a default judgment against the homebuilder for damages to the home, as well as consulting fees, attorneys' fees, and costs.  *Id.* at *2.  Despite the homebuilder's argument that the modified "your work" exclusion was "unconscionable" and "unenforceable" under Texas law, the Court concluded that the modified exclusion l precluded coverage for the damages suffered to the house, relying upon the Texas Supreme Court's discussion in *Lamar Homes*.  *Id.* at *5-*6.

The Fifth Circuit recently affirmed Judge Hoyt's opinion.  The Fifth Circuit discussed the Feasters' argument that the modified "your work" exclusion did not apply because the soil— which was not the builder's work—caused the property damage and not the builder's work.  2015 WL 5050136, at *2-3.  The Fifth Circuit rejected that argument because the Feasters contracted with the builder to build the entire house, which included the preparation of the soil, foundation, and house structure.  *Id.* at *3.

Here, in an almost identical factual scenario as in *Feaster*, the Pattons seek to recover for damages awarded by the arbitrator for damages to their house.  As was the case in *Feaster*, the subcontractor exception is removed from the "your work" exclusion by endorsement.  As a result, there is no coverage for damages to the Patton's house (or the consulting costs, attorneys' fees, and interest) after the Patton's house was completed regardless of whether Black Diamond or a subcontractor caused the damage.[4]

---

[4] To the extent the Pattons argue that the "your work" exclusion does not preclude coverage for "property damage" that was caused by someone else's work, this argument misses the mark.  The Mid-Continent policies insuring agreements provide insurance coverage only for "those sums that [Black Diamond] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."  *See also Feaster*, 2015 WL 5050136, at *3, n.4 ("This argument is somewhat illogical as [the homebuilder] could be liable only if it did something wrong.  If forces outside its control caused the harm, there would be no liability.").

The arbitrator's award makes clear that the damages are "to repair the house" for "the resulting damage to the structure."  The Mid-Continent policies provide no coverage for the Plaintiffs' judgment against Black Diamond due to the applicability of the modified exclusions j.(5) and l.[5]  Because there is no duty to indemnify Black Diamond for the Plaintiffs' judgment, the Plaintiffs, who hold Black Diamond's rights under the Policy, are not entitled to recover the same against Mid-Continent.

**F.**    **Without coverage for Black Diamond's damage to the Pattons' house, all of the other causes of action must be dismissed**

       *1.*    *Without coverage, there is no claim for breach of contract.*

As discussed above, there is no coverage under the Mid-Continent policies for the damages Plaintiffs seek.  Without coverage, Mid-Continent's declination to pay for the damages at issue is not a breach of the policies between Mid-Continent and its insured, and Plaintiffs' claim for breach of contract is without merit.

Plaintiffs' claim of common-law bad faith must fail for two independent reasons: there is no breach of contract, nor an independent tort.  Under Texas law, the threshold of bad faith is reached when a breach of contract is accompanied by an independent tort, and the tort must produce damages independent of the policy claim. *Universal Life Ins. Co. v. Giles,* 950 S.W.2d 48, 64 (Tex. 1997)(J. Hecht, concurring)(quoting *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex. 1994)); *Provident Am. Ins. Co. v. Castaneda,* 988 S.W.2d 189, 198 (Tex. 1998) (finding no bad faith in the absence of "damage to the insured other than policy benefits").

In this case, as discussed above, there is no breach of contract.  Likewise, Plaintiffs have not pleaded and have no evidence showing any damage suffered by the Builder separate and apart from the claim of proceeds under the Policy contract, arising from Mid-Continent's

---

[5] Exclusion j(1) would also preclude coverage to the extent any "property damage" occurred while Black Diamond owned the property.  *See Feaster*, 2015 WL 5050136, *3 n.5.

allegedly wrongful denial of benefits.  In the absence of either or both required elements of a bad faith claim, Mid-Continent is entitled to judgment as a matter of law as to Plaintiffs' claim of bad faith.

Moreover, an insurer is entitled to prevail on a bad faith claim, even if the denial of a claim was erroneous, if the proof establishes that there is nothing more than a good faith dispute regarding the applicability of coverage.  *See U.S. Fire Ins. Co. v. Williams,* 955 S.W.2d 267, 268-69 (Tex. 1997).

As discussed above, the Texas Supreme Court has already opined in *Lamar Homes* that the policy provisions relied on by Mid-Continent in this case would "eliminate coverage" for a homebuilder that produced and sold a defective home where there is a subcontractor exclusion removing the exception for a coverage exclusion which was absent in *Lamar Homes*, facts identical to this case.  *Lamar Homes* 242 S.W.3d 1, 11 (Tex. 2007).  Under these facts, even if Plaintiffs were to ultimately prevail on coverage, there can be no doubt that Mid-Continent's dispute of the same is *bona fide,* and accordingly, not grounds for a bad faith claim.

> ### 2.    *Without a bad faith claim, Plaintiffs statutory claims, sounding in an unreasonable denial of benefits, fail as a matter of law.*

The Texas Insurance Code and the Deceptive Trade Practices Act claims are in large measure statutory fleshing-out of the already existing common law requirements. *Douglas v. State Farm Lloyds,* 37 F.Supp.2d 532, 544 (S.D.Tex. 1999).  Extra-contractual tort claims pursuant to the Texas Insurance Code and the DTPA require the same predicate for recovery as bad faith causes of action, an unreasonable denial of benefits resulting in damage. *See id.* at 543-44 ("an individual *who has been damaged* . . . may bring a statutory cause of action" and "the `reasonableness' requirements of common law good faith apply equally in the statutory context.") (emphasis added).  Thus, when an insured joins claims under the Texas Insurance

Code and the DTPA with a bad faith claim, all founded upon and asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims.  *Id.* at 544.

As discussed above, there is no breach of contract in the denial of indemnity benefits for the Black Diamond's damage to the House under the Mid-Continent policies and there are no independent damages resulting from Mid-Continent's alleged wrongful denial of policy benefits. Accordingly, because the Plaintiffs' claim of bad faith fails as a matter of law, so too must the Plaintiffs claims under the Texas Insurance Code and DTPA.

> ### 3. *Plaintiffs are not entitled to an award of fees under Chapter 38 of the Texas Civil Practice and Remedies Code because Chapter 38 does not apply in an insurance context.*

Plaintiffs seek an award of attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code.  But Chapter 38 of the Texas Civil Practice and Remedies Code "does not apply to a contract issued by an insurer that is subject to the provisions of Title 11, Chapter 541 or Chapter 542 of the Texas Insurance Code. TEX. CIV. PRAC. & REM. CODE § 38.006. Because there is no dispute that Mid-Continent is an insurer bound to comply with Chapters 541 and 542 of the Texas Insurance Code, Plaintiffs are not entitled to an award of attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code even if a breach of the Policy contract were ultimately shown.

## V.
## CONCLUSION

The Pattons hold a valid judgment against Black Diamond, the builder, for damages to their house.  However, even if the Pattons could show "property damage" caused by an "occurrence" and such "property damage" occurred during a "policy period," the damages awarded by the arbitrator are not covered because of the applicability of two business-risk

exclusions.  Finally, the extra-contractual claims raised by the Pattons (including bad faith and

DTPA violations) lack merit because the Mid-Continent policies do not provide coverage for the

judgment.

                                        Respectfully submitted,


                                        By:    /s/ R. Brent Cooper
                                               **R. BRENT COOPER**
                                               State Bar No. 04783250
                                               SDTX Bar No. 18271
                                               brent.cooper@cooperscully.com
                                        **COOPER & SCULLY, P.C.**
                                        Founders Square
                                        900 Jackson Street, Suite 100
                                        Dallas, Texas 75202
                                        Telephone:  (214) 712-9500
                                        Telecopy:  (214) 712-9540

                                        **ATTORNEY IN CHARGE FOR
                                        DEFENDANT MID-CONTINENT
                                        CASUALTY COMPANY**


**OF COUNSEL:**

**COOPER & SCULLY, P.C.**

**Robert J. Witmeyer**
State Bar No. 24091174
SDTX Bar No. 2600115
rob.witmeyer@cooperscully.com
Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone:  (214) 712-9500
Telecopy:  (214) 712-9540

---

**DEFENDANT/JUDGMENT-DEBTOR MID-CONTINENT CASUALTY**                    Page 22 of 23
**COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS**
D/929027v3

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the above and foregoing document was served on counsel for all parties listed below via ECF and pursuant to the Federal Rules of Civil Procedure on the 22nd day of September 2015.

Michael A. Hirsch
Schlanger, Silver, Barg & Paine, LLP
109 North Post Oake Lane, Suite 300
Houston, TX  77024


*/s/ R. Brent Cooper*
**R. BRENT COOPER**