Case 4:15-cv-01371   Document 27   Filed in TXSD on 06/13/16   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
June 13, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GRIER PATTON and CAMILLE PATTON, | § § § | |
| Plaintiffs, | § § | |
| and | § § | |
| DAVID A. FETTNER, | § § | CIVIL ACTION NO. H-15-1371 |
| Receiver, | § § | |
| v. | § § | |
| MID-CONTINENT CASUALTY COMPANY, | § § | |
| Defendant. | § | |

### MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendant's Motion for Judgment on the Pleadings (Doc. 14). The court has considered the motion, the response, the reply, the response to the reply, the documents attached to the pleadings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that the motion be **GRANTED**.

### I. Case Background

This insurance dispute centers on coverage obligations allegedly owed by Defendant to satisfy a judgment entered against its insured Black Diamond Builders, L.L.P., ("Black Diamond"), a residential home builder, in favor of Plaintiffs.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 7.

**A.   Insurance Policies**

Defendant issued insurance policies for commercial general liability ("CGL") that identified Black Diamond as a named insured and provided yearly coverage periods from July 7, 2004, through July 7, 2009.[2]  Pursuant to each of the policies, Defendant agreed to pay "those sums that the insured bec[ame] legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the] insurance applie[d]."[3]  In general terms, the insurance covered bodily injury or property damage caused by an occurrence within the coverage territory and the policy period.[4]

The policy excluded, inter alia, coverage for damage to certain property.[5]  Policy exclusion j(5) stated that the insurance did not apply to property damage to "[t]hat particular part of real

---

[2] See Doc. 1-3, Ex. 3 to Notice of Removal, Pls.' Original Pet. p. 2; Doc. 1-3, Ex. 3-A to Notice of Removal, Certificate of Liab. Ins. Effective July 7, 2004, to July 7, 2005; Doc. 1-3, Ex. 3-B to Notice of Removal, Certificate of Liab. Ins. & Com. Gen. Liab. Pol'y Effective July 7, 2005, to July 7, 2006; Doc. 1-4, Ex. 3-C to Notice of Removal, Certificate of Liab. Ins. & Com. Gen. Liab. Pol'y Effective July 7, 2006, to July 7, 2007; Doc. 1-5, Ex. 3-D to Notice of Removal, Com. Gen. Liab. Pol'y Effective July 7, 2007, to July 7, 2008; Doc. 1-6, Ex. E to Notice of Removal, Com. Gen. Liab. Pol'y Effective July 7, 2008, to July 7, 2009; Doc. 10, Def.'s 1st Am. Answer pp. 2-3.

[3] Doc. 10-1, p. 14 of 63, Ex. A to Def.'s 1st Am. Answer, Com. Gen. Liab. Pol'y Effective July 7, 2004, to July 7, 2005, Com. Gen. Liab. Coverage Form § I(1)(a).  The policies for the different coverage periods were identical in all relevant aspects.  To simplify the footnotes herein, the court cites only to the earliest issued policy of the five policies that the parties submitted.

[4] Doc. 10-1, p. 14 of 63, Ex. A to Def.'s 1st Am. Answer, Com. Gen. Liab. Pol'y Effective July 7, 2004, to July 7, 2005, Com. Gen. Liab. Coverage Form § I(1)(b).

[5] See Doc. 10-1, p. 31 of 63, Exclusion — Damage to Work Performed by Subcontractors on Your Behalf Endorsement CG 22 94; Doc. 10-1, p. 52 of 63, Residential Contractor Extension A Homebuilders Division Endorsement ML 11 91 (04 00).

property on which you [Black Diamond] or any contractors or subcontractors working directly or indirectly on your [Black Diamond's] behalf [we]re performing operations, if the 'property damage' ar[ose] out of those operations."[6]  Exclusion l, as modified by Endorsement CG 22 94 10 01, stated that insurance coverage did not apply to:

> **l.  Damage To Your Work**
>
>    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."[7]

The endorsement modified exclusion l of the policy by eliminating the exception "if the damaged work or the work out of which the damage ar[ose] was performed on your behalf by a subcontractor."[8]

The policy defined "your work" to mean work or operations performed by Black Diamond or on Black Diamond's behalf and "[m]aterials, parts or equipment furnished in connection with such work or operations," including warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'" and "[t]he providing of or

---

[6]  Doc. 10-1, p. 52 of 63, Residential Contractor Extension A Homebuilders Division Endorsement ML 11 91 (04 00).

[7]  Doc. 10-1, p. 31 of 63, Exclusion — Damage to Work Performed by Subcontractors on Your Behalf Endorsement CG 22 94 10 01.

[8]  Compare Doc. 10-1, p. 17 of 63, Ex. A to Def.'s 1st Am. Answer, Com. Gen. Liab. Pol'y Effective July 7, 2004, to July 7, 2005, Com. Gen. Liab. Coverage Form § I(2)(l) with Doc. 10-1, p. 31 of 63, Exclusion — Damage to Work Performed by Subcontractors on Your Behalf Endorsement CG 22 94 10 01.

failure to provide warnings or instructions."[9] The policy defined "products-completed operations hazard" to include all bodily injury and property damage occurring away from Black Diamond's own premises and arising out of Black Diamond's product or work.[10]

**B.  Arbitration and Enforcement Suit**

The dispute between Plaintiffs and Black Diamond centered on damage to Plaintiffs' residence due to foundation issues.[11] An arbitration case was opened in December 2010 to resolve the dispute.[12] After much prehearing litigation, the only remaining parties were Plaintiffs and Black Diamond.[13] The hearing on the merits began with the presentation of opening statements and evidence on August 25, 2014.[14] The hearing continued on September 3, 2014.[15] On October 21, 2014, the arbitrator entered an Award of Arbitrator ("Award").[16]

The arbitrator found that the evidence showed "both design and

---

[9]     Doc. 10-1, p. 29 of 63, Ex. A to Def.'s 1st Am. Answer, Com. Gen. Liab. Pol'y Effective July 7, 2004, to July 7, 2005, Com. Gen. Liab. Coverage Form § V(22).

[10]    Doc. 10-1, p. 28 of 63, Ex. A to Def.'s 1st Am. Answer, Com. Gen. Liab. Pol'y Effective July 7, 2004, to July 7, 2005, Com. Gen. Liab. Coverage Form § V(16)(including exceptions that are not applicable in this case).

[11]    See Doc. 1-7, Ex. 3-F-1 to Notice of Removal, Award of Arbitrator ("Award") p. 1.

[12]    See id.

[13]    See id.

[14]    See id.

[15]    See id.

[16]    See id. p. 4.

4

construction errors led to [Plaintiffs'] damage."[17] While acknowledging that other design and contracting entities were involved in the design and construction of "the residence and pool" and the resulting problems, the arbitrator found that the evidence "clearly established" Black Diamond's "significant culpability."[18]

The arbitrator held Black Diamond, as the main building contractor, at least fifty-one percent liable for Plaintiffs' damage resulting from negligence in its own work and negligent supervision of others.[19] In particular, the arbitrator noted, the evidence showed that the foundation of Plaintiffs' house was not elevated to plans or applicable code, preventing positive drainage away from the house and resulting in the foundation's settling and heaving that caused significant damage to the entire structure.[20] The arbitrator found that Black Diamond's "actions seriously affected the work of other contractors on the project (including both the subcontractors of [Black Diamond] and the separate contractors hired by [Plaintiffs]."[21]

The arbitrator found that repairing the house would cost more

---

[17]    Id. p. 2.

[18]    Id. pp. 2, 3.

[19]    See id. p. 3.

[20]    See id. p. 2.

[21]    Id.

than the market value of the house.[22]  Therefore, the arbitrator based the damage model on the market value of the house without impairment[23] less the value of the underlying land and, in addition to that amount, awarded engineering and consulting fees, attorneys' fees, and prejudgment interest, which totaled $2,935,944.[24]  The arbitrator separately awarded reimbursement of Plaintiffs' fees, compensation, and expenses of the American Arbitration Association and the arbitrator.[25]  The Award allowed Black Diamond forty-five days from the date of the Award to make payment, after which six-percent interest would begin to accrue on the Award amount.[26]

Plaintiffs filed an application to confirm and enforce the Award.[27]  Black Diamond failed to appear or answer after service.[28]  On January 12, 2015, the 55th Judicial District Court of Harris County, Texas, entered Judgment in favor of Plaintiffs, confirming the Award against Black Diamond and reducing the Award to

---

[22] See id.

[23] In one part of the Award, the arbitrator described the damage model as subtracting the value of the underlying land from "the unrepaired value of the home" versus "value without impairment" as stated in his statement of Award. Compare id. p. 2 with id. p. 3.  The court reads the reference to the "unrepaired" value to be an error, likely intended to be "unimpaired" value consistent with the Award itself.  Otherwise, the Award would not have covered Plaintiffs' damages for wrong that occurred.

[24] See id. p. 3.

[25] See id.

[26] See id.

[27] See Doc. 1-7, Ex. 3-F to Notice of Removal, Judgment Dated Jan. 12, 2015 p. 1.

[28] See id.

judgment.[29] The court also assessed five-percent post-judgment interest commencing thirty days after the date of the Judgment.[30]

After conducting extra-judicial, post-judgment discovery and attempting to collect the Judgment, Plaintiffs sought assistance from the state court.[31] On March 16, 2015, the court entered an Order for Turnover Relief and Appointment of Receiver ("Turnover Order") that named David Fettner as Receiver to pursue the assets of Black Diamond for satisfaction of the judgment.[32] Additionally, the court ordered Black Diamond to turn over to Receiver specific documentation related to insurance coverage under the policies issued by Defendant, including correspondence and insurance proceeds related to Plaintiffs' claims.[33]

**C.   History of this Lawsuit**

On April 13, 2015, Plaintiffs filed their original petition in the 269th Judicial District Court of Harris County, Texas.[34] Defendant removed the action within thirty days of being served.[35] In the original petition, Plaintiffs described the gravamen of

---

[29]   See id. pp. 1-3.

[30]   See id. p. 2.

[31]   See Doc. 1-7, Ex. 3-G to Notice of Removal, Order on Turnover Relief & Appointment of Receiver p. 1.

[32]   See id.

[33]   See id. pp. 2-3.

[34]   See Doc. 1-3, Ex. 3 to Notice of Removal, Pls.' Original Pet. p. 1.

[35]   See Doc. 1, Notice of Removal p. 2.

their lawsuit to be the satisfaction of the Judgment through collection of insurance proceeds as successors-in-interest to Black Diamond's claims under the aforementioned policies.[36]

In addition to seeking the payment of insurance proceeds, Plaintiffs alleged breach of contract, bad faith, and unfair settlement practices pursuant to Texas common and statutory law.[37] For these claims, Plaintiffs requested actual and punitive damages.[38] Plaintiffs attached the insurance certificates and/or policies for the coverage years 2004 through 2009, the Judgment with Award attached, the Turnover Order, and Defendant's responses to Black Diamond's notice of claim.[39]

On May 15, 2015, Defendant filed an answer in state court, asserting a general denial.[40] On May 21, 2015, Defendant timely removed the case to this court.[41] On June 24, Defendant filed an amended answer that complied with federal filing standards.[42] Defendant raised the defense that the loss suffered by Plaintiffs did not fall within the insuring agreement and/or fell within the exclusionary language of endorsement ML 11 91 (04 00) or

---

[36] See Doc. 1-3, Ex. 3 to Notice of Removal, Pls.' Original Pet. p. 3.

[37] See id. pp. 5-12.

[38] See id. p. 13.

[39] See Doc. 1-3 to 1-8, Exs. A-J to Pls.' Original Pet.

[40] See Doc. 1-9, Ex. 6 to Notice of Removal, Def.'s Original Answer.

[41] See Doc. 1, Notice of Removal.

[42] See Doc. 10, Def.'s 1st Am. Answer.

endorsement CG 22 94 10 01.[43]

## II. Judgment on the Pleadings

Pursuant to Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed and early enough in the litigation not to delay trial. "Judgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain." Voest-Alpine Trading USA Corp. v. Bank of China, 142 F.3d 887, 891 (5th Cir. 1998)(citing Hebert Abstract Co. v. Touchstone Props., Ltd., 914 F.2d 74, 76 (5th Cir. 1990).

The same standard is used in considering a motion for judgment on the pleadings as is used in considering a Rule 12(b)(6) motion to dismiss. Gentilello v. Rege, 627 F.3d 540, 543-44 (5th Cir. 2010). Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to "state a claim upon which relief can be granted." When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. Sullivan v. Leor Energy, LLC, 600 F.3d 542, 546 (5th Cir. 2010).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

---

[43] See id. pp. 6-8.

(2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

In addition to those facts contained in the plaintiff's pleading, the court also may consider the contents of documents attached to the pleadings. Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp., 748 F.3d 631, 635 (5th Cir. 2014)(quoting Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000)); see also Fed. R. of Civ. P. 10(c)("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

### III. Insurance Law

Under Texas law, the insured generally bears the initial burden of establishing that there is coverage under an applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp., 532 F.3d 398, 401, 404 (5th Cir. 2008)(applying Texas law);

see also Tex. Ins. Code § 554.002 (placing the burden on the insurer to prove the applicability of an exclusion). If the insurer is successful, the burden shifts back to the insured to prove that the exclusion does not apply or an exception to the exclusion applies. Century Sur. Co. v. Hardscape Constr. Specialties, Inc., 578 F.3d 262, 265 (5th Cir. 2009)(applying Texas law).

Insurance policies are subject to the rules of contract interpretation. Tanner v. Nationwide Mut. Fire Ins. Co., 289 S.W.3d 828, 831 (Tex. 2009). In construing the terms of a written contract, the court's primary purpose is always to "ascertain the true intent of the parties as expressed in the instrument." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., 907 S.W.2d 517, 520 (Tex. 1995); see also Tanner, 289 S.W.3d at 831. To this end, the court is to read the contract as a whole and to give effect to each term so that no part of the agreement is left without meaning. Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London, 327 S.W.3d 118, 126 (Tex. 2010). When a contract as worded can be given "a definite or certain legal meaning," then it is unambiguous as a matter of law, and the court enforces it as written. CBI Indus.,907 S.W.2d at 520; see also Fiess v. State Farm Lloyds, 202 S.W.3d 744, 746 (Tex. 2006).

In Texas, an insurer's duty to defend and its duty to indemnify are two "distinct and separate" duties. Ewing Constr.

Co. v. Amerisure Ins. Co., 420 S.W.3d 30, 33 (Tex. 2014). The duty to indemnify is triggered only by the actual facts establishing the insured's liability in the underlying adjudication. See ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 844 (5th Cir. 2012)(applying Texas law)(citing Gilbane Bldg. Co. v. Admiral Ins. Co., 664 F.3d 589, 601 (5th Cir. 2011)(applying Texas law))("[T]he duty to indemnify . . . is controlled by the facts that establish liability in the underlying suit."). A plaintiff's success in the underlying adjudication on a claim that is covered by the insurance policy triggers the duty to indemnify. Mid-Continent Cas. Co. v. Castagna, 410 S.W.3d 445, 450 (Tex. App.—Dallas 2013, pet. denied).

Therefore, the court must "consider facts outside of those alleged in the petition in determining the duty to indemnify." Gilbane Bldg. Co., 664 F.3d at 601 (citing Burlington N. & Santa Fe Ry. Co. of Pittsburgh, Pa. v. Nat'l Union Fire Ins. Co., 334 S.W.3d 217, 219 (Tex. 2011)). In order to determine whether Defendant has a duty to indemnify here, the court compares the Award with the insurance policies.

## IV. Discussion

For purposes of its motion for judgment on the pleadings, Defendant assumes that Plaintiffs' claim fits within the coverage provisions of the insurance contract.[44] Instead of challenging

---

[44] See Doc. 14, Defendant's Mot. for J. on the Pleadings pp. 2, 9.

coverage, then, Defendant points to the two exclusions for damage to Black Diamond's work ("Your Work Exclusions"), arguing that one of the two precludes coverage regardless of the date on which the damage occurred.

Plaintiffs disagree with Defendant that the exclusions apply to the Award. Plaintiffs contend:

> The Award of Arbitrator at page 3 particularly references ". . . (<u>both negligence of its own work and negligent supervision of others</u>) against Black Diamond." The Award, at page 2, particularly excludes considering the "Other design and contracting entities involved in the building of the residence and <u>pool in question</u>. . . . Those parties and [Plaintiffs] were involved in companion litigation, but were ultimately not in the instant arbitration." . . . <u>The work of those other parties are [sic] nowhere claimed by Defendant to be subcontractors or otherwise within the exclusion of the "Your Work" exception. This alone raises the issue of damage by Defendant outside of the "Your Work" exclusion</u>.
> . . . For the reason that the Award of Arbitrator ipso facto limited itself to the damages occasioned by this builder/general contractor defendant to the pool and premises [sic] These two (2) sets of damages are considered as one in the Award. The fact is the Award makes separate reference to the pool as a separate construction independent of the home, albeit affected by the builder/general contractor's defective site preparation and negligent supervision. Contrary to Defendant's footnote, the arbitrator's award does not make "clear that the only damages awarded are those for damages to Plaintiffs' house." The Award could be more clear, but this too becomes a question of fact where otherwise a reasonable inference can be drawn to the benefit of Plaintiffs, as to the pool and other work not related to the house construction or even a part thereof, which was the work of others, and was damaged by the insured builder/general contractor.[45]

---

[45] Doc. 21, Pls.' Resp. to Def.'s Mot. for J. on the Pleadings p. 7 (underlining in original).

In their response to Defendant's reply, Plaintiffs further explain their position:

> Defendants' [sic] Reply stating [sic] the "Plaintiffs mistakenly contend the Arbitrator awarded damages against Black Diamond for the pool . . . ." [sic] As a part of the general contractor's work product. [sic] However this comment is Defendant's misunderstanding of Plaintiffs' observation that the Arbitrator actually did not consider the pool in premises damages, particularly excluding it as "separate from the home structure[."]  All of this Defendant's dialogue and premises ignore the obvious: <u>The Arbitrator acknowledged the work of others in considering and assessing his damage award as particularly stated in his findings</u>.[46]

Deconstructing Plaintiffs' argument, the court understands Plaintiffs to contend that the Award left open the possibility that independent contractors performed work on the house and pool and, if Black Diamond's negligence damaged that work, it would not be excluded from policy coverage.[47]  This argument does not comport with the language of the Award or the language of the policy exclusions.

The Award language reflects that the arbitrator recognized

---

[46]    Doc. 26, Pls.' Resp. to Def.'s Reply to Pls.' Resp. to Def.'s Mot. for J. on the Pleadings p. 2 (underlining in original).

[47]    Plaintiffs cited <u>Wilshire Ins. Co. v. RJT Constr., LLC</u>, 581 F.3d 222, 226 (5th Cir. 2009), as clarifying that the work of a company hired to repair the foundation did not include damage to other property resulting from defective work, such as walls and ceilings. See Doc. 21, Pls.' Resp. to Def.'s Mot. for J. on the Pleadings p. 9.  That case involved a company hired only to perform foundation repairs. See <u>Wilshire Ins. Co.</u>, 581 F.3d at 224.  Six years after the repairs, cracks in the walls and ceilings suddenly appeared, and the homeowner subsequently sued the foundation company. <u>Id.</u>  The court found that the Your Work Exclusion in the company's CGL policy precluded coverage for repairing the foundation, which was the work performed by the insured, but did not exclude coverage for damage to other parts of the house, including the walls and ceilings. See <u>id.</u> at 227.  As explained in this memorandum, Black Diamond was the homebuilder/general contractor (not just the foundation repairer) whose work was the entire house (not just the foundation).

Black Diamond as the homebuilder/general contractor and, as such, recognized the entire structure to be Black Diamond's work.  This is consistent with Texas law.  See Wilshire Ins. Co. v. RJT Constr., LLC, 581 F.3d 222, 226 (5th Cir. 2009)(applying Texas law & discussing Lamar Homes Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 11 (Tex. 2007)); Feaster v. Mid-Continent Cas. Co., Civil Action No. 4:13-CV-3220, 2015 WL 164041, at *5 (S.D. Tex. Jan. 13, 2015)(slip copy).  The Award thus compensated Plaintiffs only for the damage to the structure itself.  Several aspects of the Award highlight this approach, for example: (1) the arbitrator's repeated reference to damage to the structure itself; (2) the arbitrator's omission of any discussion of specific damage to the work of others; and (3) the arbitrator's choice of damage models, which measured the difference in value of the entire structure. Acknowledging the work of others is not the same as awarding compensation for damage to the work of others.[48]

More important, though, is the language of the exclusions.

---

[48] The only mention of the work of others is when the arbitrator allowed that Black Diamond's negligence "seriously *affected* the work of other contractors on the project," including subcontractors and "separate contractors." Doc. 1-7, Ex. 3-F-1 to Notice of Removal, Award p. 2 (emphasis added).  The arbitrator did not specifically mention *damage* to the work of other contractors or specify any further how it *affected* the work of other contractors.  Plaintiffs argued that damage to the irrigation system and pool was damage to the work of others.  This ignores the reality that no such damages were included in the Award.
On that point, Plaintiffs argue that they do not bear the burden of showing that the work of independent contractors was damaged, but, rather, the burden belongs to Defendant to disprove that the work of independent contractors was damaged.  Because the court interprets the Award to cover only damage to work performed by Black Diamond or on Black Diamond's behalf, Defendant met its burden.

Both exclusions covered Black Diamond's work and work performed on its behalf.  Exclusion j(5) precluded coverage of property damage on which Black Diamond or "any contractors or subcontractors working directly or indirectly on [Black Diamond's] behalf" performed operations.[49]  Exclusion l precluded coverage of property damage to "your work," which the policy defined to mean work performed by Black Diamond or on Black Diamond's behalf.[50]  Thus, they both cover, in addition to Black Diamond's own work, work by others performed on Black Diamond's behalf.

Plaintiffs draw a distinction between subcontractors and independent contractors, arguing the former is included in the exclusions but not the latter.  The policy language is not so limited.  Exclusion j(5) specifically covered both contractors and subcontractors, and exclusion l imposed no limitation on what type of entity might be performing work on Black Diamond's behalf.[51]  Because Black Diamond was the homebuilder/general contractor, all of the work performed by others on the house as a whole was performed on Black Diamond's behalf for the completion of the house.

---

[49]    Doc. 10-1, p. 52 of 63, Residential Contractor Extension A Hombuilders Div. Endorsement ML 11 91 (04 00).

[50]    Doc. 10-1, p. 31 of 63, Exclusion — Damage to Work Performed by Subcontractors on Your Behalf Endorsement CG 22 94 10 01.

[51]    The standard policy language of exclusion l, which excepted the work of subcontractors, was modified by endorsement specifically to exclude all work performed by others on behalf of Black Diamond.

As another point of opposition, Plaintiffs argue that Defendant "<u>assumes facts not in evidence</u>, e.g., <u>when</u> the negligence occurred" and that "neither the Award of Arbitrator, <u>nor the Plaintiffs' Complaint define when the damages occurred so as to be subject to any timed exclusion, and the burden to prove the facts supporting the exclusion would devolve to the Defendant, who makes no offer of proof in that regard</u>."[52]

Contrary to Plaintiffs' assertion, Defendant's argument does not require an assumption about when the damages occurred other than that the damages occurred during a covered policy period. For purposes of the exclusions, Defendant argues that it does not matter when the damages occurred because the two exclusions, j(5) and l, cover the entire insured period. According to the policy terms, exclusion j(5) precludes coverage if the damage to Plaintiffs' house occurred while Black Diamond was building the house, and exclusion l precludes coverage if the property damage occurred after Black Diamond had completed the house. Therefore, the actual occurrence date is immaterial.

Plaintiff further contends:

> Only if the "Your Work" exclusion plays in the issue of <u>when</u> does the "when" have any enforceable significance; if this is not intended to an analysis [sic] not considered where work is being damaged, then the policy would neither cover work in progress nor completed work, which would render the policy a farce as never covering

---

[52] Doc. 21, Pls.' Resp. to Def.'s Mot. for J. on the Pleadings pp. 2, 8 (underlining in original).

anything, irrespective of the "Your Work" reference.[53] The court does not fully understand what point Plaintiffs are making in the quoted paragraph but understands their argument generally to be that the exclusions, as applied to exclude coverage for the Award, write out all coverage of the policy.

Exclusions j(5) and l are among several "business risk" exclusions that are commonly included in CGL policies. See Mid-Continent Cas. Co. v. JHP Dev., Inc., 557 F.3d 207, 211-12 (5th Cir. 2009)(citing cases)(applying Texas law); Feaster, 2015 WL 164041, at *5. As explained by the Fifth Circuit, "A CGL policy generally protects the insured when his work damages someone else's property. The 'your work' exclusion prevents a CGL policy from morphing into a performance bond covering an insured's own work." Wilshire Ins. Co., 581 F.3d at 226. In other words, CGL policies do not cover damage to the insured's work or to work performed on the insured's behalf regardless of when the damage occurred because that is not the purpose of CGL coverage. CGL policies do cover damage to the work of others caused by the insured. The policy is not a "farce" empty of any coverage.

The arbitrator's findings, as articulated in the Award, conclusively establish that the damages awarded were excluded from coverage by either exception j(5) or exception l.

Plaintiffs request an opportunity to amend their pleading but

---

[53] Id. p. 13 (underlining in original).

offer no indication of how they would amend or how they believe the amendment would affect the court's decision.  No amendment would change the result.  The request to amend is **DENIED**.

## V. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Judgment on the Pleadings be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 13th day of June, 2016.

_____
U.S. MAGISTRATE JUDGE